The Baltimore and Ohio and Chicago Railroad Co. v. Walborn, Adm'r.

Filed Jan. 31, 1891.

————◆——

No. 14,513.

THE BALTIMORE AND OHIO AND CHICAGO RAILROAD COMPANY v. WALBORN, ADMINISTRATOR.

RAILROAD.—*Injuries to Travellers at Public Crossing.*—*Failure to Give Statutory Signals.*—*Contributory Negligence.*—Where those in charge of a train approach a railroad crossing without giving the statutory signals, they are guilty of such negligence as renders the company liable to one who, without concurring negligence, is injured while attempting to cross the track.

SAME.—*Negligence.*—*When Question of Law and when of Fact.*—Where the

The Baltimore and Ohio and Chicago Railroad Co. *v.* Walborn, Adm'r.

facts are undisputed, and where but one inference can be drawn from the undisputed facts, the question of negligence is one of law; but where more than one inference may be reasonably drawn from the facts, the question is one of fact for the jury, under proper instructions from the court. For a state of facts where more than one inference might be drawn, and where, therefore, the question of negligence was one of fact for the jury, see opinion.

From the Allen Circuit Court.

*J. H. Collins* and *B. B. Kingsbury,* for appellant.

*W. L. Penfield,* for appellee.

COFFEY, J.—This was an action by the appellee, as administrator of the estate of Andrew Bolander, deceased, against the appellant, to recover damages for an injury resulting in the death of the said Bolander.

The second paragraph of the complaint, upon which the cause was tried, alleges, substantially, that, on August 9th, 1887, the appellant was, and still is, running and operating a railroad running through the town of Garrett, in this State ; that during all of said time there extended through the central part of said town and public street, running north and south, which street was intersected by the right of way of the defendant and its tracks, and which right of way and tracks ran east and west through the central portion of said town, and all of which were within the corporate limits of said town ; that on said day the decedent was driving north along said street with a span of horses and wagon thereto attached, and while he was thus driving along said street and onto and upon said crossing, and was attempting to drive and pass over said crossing, he was, without any fault on his part, run against and over by an engine and car of the defendant thereto attached, solely through and by the negligence of the defendant ; that the defendant, by its servants, who were then operating said engine and car as aforesaid, negligently failed and omitted to give any warning or signal of the approach of said engine and car towards the crossing, by the sounding of a whistle or the ringing of a bell, or by any watch-

man or flagman, or in any other manner, and had negligently failed to provide any such watchman or flagman or gate at such crossing, although it was frequently passed over by the travelling public; that although said decedent, as he approached and entered upon said crossing, exercised all due and proper care on his part, and looked and listened to see or hear any train that might be approaching, yet being unable to see or hear any train or engine in motion on account of the obstruction of his view by cars and trains of cars then standing on said track, and there being no signal or warning of any kind of the movement of said switch engine and car, he was, without any negligence on his part, and solely by and through the said negligence of the defendant, run upon and over by said car and switch engine, and was by said collision so bruised, mangled, crushed and mortally wounded that from said wounds and injuries he, within a few days thereafter, died, to wit, on the —— day of August, 1887; that said collision, wounding and death of the decedent were caused solely by the aforesaid negligence of the defendant, and without any fault on his part; that said decedent was, at the date of said collision, forty-three years old, was of sound constitution, healthy, industrious and frugal, and by his toil and exertions supported his family in comfort; that he left surviving him his widow, Elizabeth Bolander, and four children, to wit, Frank, Emma, Lettie and Jeremiah, aged respectively, 22, 18, 16 and 15 years; that said widow and children depended solely upon said decedent for their support, nurture, education and maintenance, and this action is prosecuted solely for their benefit; that at the time of said collision said decedent was engaged in business in which he was capable of earning an income of $1,500 per year; that by reason of the premises said widow and children and the plaintiff had been damaged in the sum of $10,000, for which the plaintiff demands judgment.

To this complaint the appellant filed an answer consisting of the general denial.

The Baltimore and Ohio and Chicago Railroad Co. *v.* Walborn, Adm'r.

Upon a trial the jury returned a general verdict for the appellee, upon which the court, over a motion for a new trial, rendered judgment.

Under the repeated rulings of this court to the effect that we will not undertake to weigh the evidence in a cause, every material fact necessary to make out the appellee's case which the evidence tends to establish must be taken as true, as it was so found by the jury. Under this rule the material facts in the case are, substantially, as follows:

The injury for which this suit was prosecuted occurred in the town of Garrett on the 1st day of August, 1887. At the point where it occurred the appellant has six railroad tracks running east and west parallel with each other. The most southern rail and the most northern rail of said tracks are about sixty-five feet apart. Randolph street, in the town of Garrett, which is eighty feet wide, runs north and south and crosses the six tracks of the appellant at the point where the injury occurred. Quincy street runs east and west at a distance of about three hundred and twenty feet south of the point where Randolph street crosses the appellant's tracks. Both sides of Randolph street, south of Quincy, are occupied with business buildings for a distance of two or three blocks south of Quincy street; and by reason of that fact the view of a person travelling north on Randolph is shut off both from the east and west. Near the west side of Randolph street a large round-house and machine shops and other large buildings are situated. A board fence, six or seven feet high, completely enclosed the grounds belonging to the appellant north of Quincy street, west of Randolph street and of defendant's tracks, except a small space near the west end of the fence. The fence approaches within fifteen feet of the most southerly of the appellant's tracks. At the time of the injury the third and fourth tracks from the south were occupied with long trains of freight cars, which were standing still, and were cut into

two sections at the crossing, leaving a passage way between them of from eighteen to twenty-five feet, the two sections west of the crossing occupying the tracks upon which they stood to the round-house and machine shops, which stood on the south side of the tracks. The yard-office and other buildings stand near the northeast corner of the land enclosed by the fence above referred to, so that it was impossible for persons travelling on Randolph street north towards the crossing to see trains of cars moving along the northerly track eastward to the point where Randolph street crosses the tracks. On the south side of the tracks, and east of Randolph street, stands the passenger depot and adjacent building, one hundred and fifty feet long, the west end of which approaches within about seventy feet of Randolph street, the building being from ten to fourteen feet south of the most southerly track. On the north side of the tracks stands the freight-house within eight to fifteen feet of the most northerly track and within twenty-eight feet of the east side of Randolph street.

On the morning of the 1st day of August, 1887, about 8 o'clock, the deceased approached the crossing from the south on Randolph street, in a milk wagon, with the curtains rolled up on either side so as not to obstruct his view or hearing. He was a man of good hearing and average sight. While he was driving north on Randolph street towards the crossing, at a point one hundred feet south, he drove his team at a walk, the team continuing to walk until it entered upon the first or second track from the south. The team was kind, gentle and well-broken, and was under his control. Just before entering upon the tracks at the crossing, and as he entered thereon, he looked both east and west along the tracks to see and listened to ascertain whether he could hear any trains approaching, and did not either see or hear any train or engine in motion. There was no sound of bell or whistle, or any other noise indicating the approach of an engine or train. A dray was driven across the tracks from

The Baltimore and Ohio and Chicago Railroad Co. *v.* Walborn, Adm'r.

one to three minutes ahead of him. After he drove upon the crossing he continued to look east and west for approaching trains or engines. About the time his horses reached the sixth track in passing from the south, an engine and flat-car appeared in close proximity, running at the rate of about eight miles an hour, without escaping steam or ringing bell. As he passed between the freight cars above mentioned, some men on the opposite side of the tracks, seeing the approaching engine and flat-car, and the danger of the deceased, began to halloo and motion him to stop, but he, supposing the danger to proceed from the freight cars, started his horses in a brisk trot. He could not see the engine until he was on the fourth track. When his team saw the approaching engine it became frightened and unmanageable. He exercised his utmost effort to stop his team, but without success. Finding that he was unable to manage his team he urged it forward in order to cross in time to escape a collision, but was struck by the moving engine and flat-car, receiving injuries from which he died. From the time the engine started towards the crossing until after the collision occurred no whistle was sounded nor was the bell rung. Before his death Bolander was in the habit of passing over this crossing from two to three times a day, and was well acquainted therewith.

There is no question made in the case as to the negligence of those in charge of the engine which struck and caused the death of Bolander.

In approaching the crossing without ringing the bell, as required by the statute upon the subject, they were guilty of such negligence as rendered the company liable for the injury of which complaint is made, provided it occurred without the fault or negligence of the deceased. *Pittsburgh, etc., R. W. Co.* v. *Martin,* 82 Ind. 476; *Chicago, etc., R. R. Co.* v. *Boggs,* 101 Ind. 522; *Cincinnati, etc., R. R. Co.* v. *Butler,* 103 Ind. 31.

The only remaining inquiry arising upon these facts, therefore, relates to the question as to whether they show such

contributory negligence on the part of the deceased as precludes a recovery on account of the injury resulting in his death.   Ordinarily negligence is a mixed question of law and fact, but it has often been held by this and other courts, that, generally, where the facts are undisputed, the question of negligence becomes one of law.   This rule prevails where but one inference is to be drawn from the undisputed facts, and where the inferences can lead to but one result.   Many cases illustrating thiŝ rule are found in the reported cases of this court.   For instance, the law fixes the degree of care and duty to be exercised by a person about to enter upon a railroad crossing.   It is his duty, when approaching a point upon the highway, where a railway track is crossed upon the same level, to proceed with caution, and if he attempts to cross the track, either on foot or in a vehicle, he must, in so doing, exercise what the law regards as ordinary care under the circumstances.   He must assume that there is danger, and act with ordinary prudence and circumspection upon that assumption.   In attempting to cross he must listen for signals, notice signs put up as warnings and look attentively up and down the track.   *Ohio, etc., R. W. Co.* v. *Hill,* 117 Ind. 56.

As illustrating the rule that where but one inference can be drawn from the undisputed facts, and where the inferences to be drawn can lead to but one result, the question of negligence is one of law, are the cases which hold that a party approaching a railroad crossing under given circumstances can not recover for injuries unless he looks and listens for approaching trains.   *Cincinnati, etc., R. R. Co.* v. *Butler,* 103 Ind. 31 ; *Cincinnati, etc., R. W. Co.* v. *Howard,* 124 Ind. 280 ; *Lake Shore, etc., R. W. Co.* v. *Frantz,* 127 Pa. St. 297 ; *Aiken* v. *Pennsylvania R. R. Co.,* 130 Pa. St. 380.

In this class of cases the court adjudges, as a matter of law, that the party injured has been guilty of such contributory negligence as precludes a recovery.   Another large

class of cases further illustrating the rule is where the courts hold that under the given state of facts the party injured was not guilty of negligence, or that the railroad company, under the undisputed facts, was not negligent. . The cases of this class are too numerous to require special mention.

Between these two classes, one holding that the court will adjudge negligence from a given state of facts, and the other holding that the court will adjudge that there was no negligence from another and different given state of facts, is another class, which consists of a state of facts from which different conclusions may be drawn, and from which different deductions and results may be had.

This class of cases belongs to the jury, under proper instructions from the court, and the court will not undertake to say, as a matter of law, that any given state of facts belonging to this class constitutes negligence. The cases illustrating the rule applicable to this class of facts are numerous. One of the cases upon this subject is *Railroad Co.* v. *Stout,* 17 Wallace, 657. In that case Justice HUNT, who delivered the opinion of the court, in speaking of the rule last above mentioned, said : " Upon the facts proven in such cases, it is a matter of judgment and discretion, of sound inference, what is the deduction to be drawn from the undisputed facts. Certain facts we may suppose to be established from which one sensible, impartial man would infer that proper care had not been used, and that negligence existed ; another man equally sensible and equally impartial would infer that proper care had been used, and that there was no negligence. It is this class of cases and those akin to it that the law commits to the decision of a jury. Twelve men of the average of the community, comprising men of education and men of little education, men of learning and men whose learning consists only in what they have themselves seen and heard, the merchant, the mechanic, the farmer, the laborer ; these sit together, consult, apply their separate experience of the affairs of life to the facts proven and draw a unanimous con-

clusion. This average judgment thus given it is the great effort of the law to obtain. It is assumed that twelve men know more of the common affairs of life than does one man, that they can draw wiser and safer conclusions from admitted facts thus occurring than can a single judge."

In the case of *Ohio, etc., R. W. Co.* v. *Collarn*, 73 Ind. 261, the language above quoted is set out and approved by this court. As further illustrating this latter rule see *Nordyke & Marmon Co.* v. *Van Sant*, 99 Ind. 188 ; *Pinnell* v. *Stringer*, 59 Ind. 555; *Ruff* v. *Ruff*, 85 Ind. 431 ; *Bethell* v. *Bethell*, 92 Ind. 318 ; *Lake Shore, etc., R. W. Co.* v. *Foster*, 104 Ind. 293 ; *North British, etc., Co.* v. *Crutchfield*, 108 Ind. 518 ; *Palmer* v. *Chicago, etc., R. R. Co.*, 112 Ind. 250 ; *Wabash, etc., R. W. Co.* v. *Locke*, 112 Ind. 404; *Gaynor* v. *Old Colony, etc., R. W. Co.*, 100 Mass. 208 ; *Vinton* v. *Schwab*, 32 Vt. 612 ; *Chicago, etc., R. R. Co.* v. *Boggs, supra* ; *Salter* v. *Utica R. R. Co.*, 88 N. Y. 43 ; *French* v. *Taunton Branch R. R. Co.*, 116 Mass. 537 ; *Bonnell* v. *Delaware, etc., R. R. Co.*, 39 N. J. 189 ; *Kelley* v. *St. Paul, etc., R. W. Co.*, 29 Minn. 1 ; *Louisville, etc., R. R. Co.* v. *Crunk*, 119 Ind. 542.

The case now before us belongs to the intermediate class above named. We are asked to adjudge, as a matter of law under the facts above set forth, that the deceased was guilty of such negligence on his part as precludes the administrator in this case from recovering against the appellant for the injury which resulted in his death. This we can not do. The question as to whether he was or was not guilty of negligence under the facts and circumstances above detailed was, in our opinion, a question for the jury under proper instruction from the court.

We have carefully examined the instructions given by the court and find no error therein. They stated the law of the case to the jury correctly. Of the instructions asked and refused those which state the law correctly are, we think, embraced in those given by the court.

Some complaint is made as to the action of the court in

admitting certain evidence, but after a careful consideration of the question presented we do not think the court erred in the matter of which complaint is made. *Smith* v. *State*, 28 Ind. 321; *Cincinnati, etc., R. R. Co.* v. *McDougal*, 108 Ind. 179.

After a careful examination of all the questions presented by the record we have found no error therein for which the judgment should be reversed.

Judgment affirmed.

Filed Jan. 14, 1891; petition for a rehearing overruled March 19, 1891.