Filed May 19, 1892.

---

No. 14,484.

## CLEVELAND, CINCINNATI, COLUMBUS AND INDIANAPOLIS RAILWAY COMPANY *v.* HARRINGTON.

NEGLIGENCE.— *When Question of Contributory Negligence is for Jury.*—Where the circumstances of a particular case are such as to warrant different inferences, so that one impartial and sensible man may draw the inference and conclusion that the injured person was guilty of contributory negligence, while another man, equally impartial and sensible, may draw a different conclusion, the court will not decide as a matter of law the question of contributory negligence, but will leave it to the jury under proper instructions.

RAILROADS.—*Rate of Speed.*—A railway company may not run its trains in a populous city at the same rapid rate of speed it may in the coun-

Cleveland, Cincinnati, Columbus and Indianapolis R'y Co. *v.* Harrington.

try and escape liability on the ground that it may run such trains at any rate of speed it chooses.

SAME.—*Ordinance Regulating the Speed of Trains, Validity of.*—An ordinance of a city requiring all trains within the limits to be run at a speed not over four miles an hour, if its enactment is authorized by a statute, is valid, and evidence will not be heard that such ordinance is unreasonable, and therefore void.

SAME.—*Failure to Enforce Ordinance.*—A railway company violating an ordinance by running its trains at a rate faster than is allowed by the terms of such ordinance, can not set up as a defense that the officers and citizens of the city have never enforced such ordinance, although it has been enacted many years before.

SAME.—*Person Approaching Track, When Should Look for Coming Trains.*—The court will not undertake to say to the jury just how many feet from a railroad track a person approaching a crossing should look for approaching trains before attempting to cross such track, but will leave that question to the jury.

SAME.—*Requirement of Person Approaching Crossing.*—All the law requires of a person about to cross a railroad track at a public highway, is to use ordinary care to avoid injury.

SAME.—*Company Organized Under Special Charter.*—*No Right to Regulate Speed in Cities or Towns Reserved.*—The speed of the trains of a railway company organized under a special law of the State may be regulated by a municipal ordinance enacted in pursuance of a general statute, although no reservation to regulate the speed of such company's trains is inserted in such special charter.

CONSTITUTIONAL LAW.—*Police Power.*—*State Depriving Itself of Right to Exercise.*—A State can not deprive itself of the right to exercise the police power, and such an attempt, if made, is only a mere license, which may be revoked.

From the Marion Superior Court.

*H. H. Poppleton, A. C. Harris, W. H. Calkins* and *J. T. Dye,* for appellants.

*B. Harrison, W. H. H. Miller* and *J. B. Elam* for appellee.

COFFEY, J.—This was an action by the appellee, in the Marion Superior Court, against the appellant, to recover damages occasioned by a personal injury.

The injury on account of which damages are claimed occurred in the city of Indianapolis at a point where the appellant's railroad tracks cross Ohio street. The complaint alleges substantially, among other things, that the train

which inflicted the injury for which suit was brought was negligently run at a high and dangerous rate of speed in violation of a city ordinance, and without ringing the bell. It also contains the usual allegation that the appellee was without fault or negligence on her part.

A trial of the cause, at special term of the superior court, resulted in a verdict for appellee, upon which the court rendered judgment over a motion for a new trial. Upon appeal to the general term the judgment at special term was affirmed, from which this appeal is prosecuted.

It is insisted here that the judgment of the superior court should be reversed, because :

*First.* The undisputed facts in the case do not prove that the appellee was without negligence on her part.

*Second.* The instructions given by the court do not state the law of the case properly or correctly.

*Third.* The court erred in refusing to permit the appellant to prove that the ordinance of the city of Indianapolis regulating the speed of trains within the corporate limits of the city was unreasonable and void.

The facts in the case necessary to understand the questions presented for our decision, are substantially as follows : Ohio street, in the city of Indianapolis, runs east and west, is sixty feet wide, and at the point where the accident in question occurred, has an improved roadway in the center, and sidewalks on either side. It is much travelled, both by persons on foot and in vehicles. The appellant's railroad crosses it at an acute angle, its course being from northeast to southwest. North of Ohio street the railway track curves toward the north, there being two or more curves, varying in degree, until it finally takes an almost due north course until it reaches what is known as the Massachusetts avenue station. Southwest of the Ohio street crossing, and in the direction of the Union station, the railway track curves towards the west until it attains an almost due west course at the station.

Very much of this curvature occurs in the immediate vi-

Cleveland, Cincinnati, Columbus and Indianapolis R'y Co. v. Harrington.

cinity of the Ohio street crossing. At the point where the accident occurred there are four railway tracks crossing Ohio street, near together, and substantially parallel with each other. In travelling west on Ohio street the first track reached at the crossing is known as the Indianapolis, Bloomington and Western Railway track. This track, at the time of the accident, was owned and used exclusively by the Indianapolis, Bloomington and Western Railway Company. The track immediately west of this was used by the appellant and other railroad companies, and was known as the "down main," being the main track by which trains passed from Massachusetts avenue station to the Union station. The track next immediately west was called the "up main," being used by the appellant, and other railroad companies, in running trains from the Union station to Massachusetts avenue station. The next was a siding owned by the appellant and constituted the westerly track of the group.

Just south of Ohio street is a short siding connecting the "up main" with the "down main." A short distance east of this group of tracks a small stream, known as Pogue's Run, crosses Ohio street, and for some distance northeast of the street the general course of the stream is parallel with the railroad above described and not far from it. On this side the railroad tracks there are but few buildings near them. In walking west on Ohio street, when at a point near the bridge over Pogue's Run, the traveller has a comparatively unobstructed view of the railroad tracks to the northwest. The view in this direction, after passing a structure known as Branham's coal yard, near Pogue's Run bridge, has no obstruction until after the tracks are passed. At the time of the accident the south side of Ohio street, as well as the whole region between the railroad tracks and Pogue's Run, in the direction of the Union station, was well covered with buildings and other structures. On the south side of this street, and abutting immediately upon it, there was a large lumber yard enclosed by a high tight fence,

which, with other structures, occupied the space west of Pine street, running north and south to a point about eight feet east of the I., B. & W. track.

At the time of injury of which complaint is made, the appellee was about forty years of age, in good health, with the senses of sight and hearing unimpaired. On the morning of the 13th day of April, 1886, about 7 o'clock, she started from her home, east of the Ohio street crossing, to Market, and walked west on the south side of Ohio street at a moderate gait. The morning was bright and no wind was blowing.

As she approached the railway crossing a freight train, composed of from ten to fifteen cars, with engine and caboose attached, was moving north on the " up main " at the speed of about four miles an hour, the rear of the train being near the crossing at the time she reached it. The train was making the noise usually made by moving trains, the engine was ringing the bell and the steam was escaping from the dome. The noise made by this train was such as rendered it difficult, if not impossible, to hear or to distinguish the noise of other approaching trains. The appellant, when eighty or ninety feet east of the " down main," could see north up the track a distance of eight hundred feet. At that point she looked and saw no approaching train. When at the east side of the first track, which is thirty-seven feet west of the " down main," she was able to see north up the track for a distance of four hundred feet. She again looked and saw no approaching train. She then crossed the first track and turned her attention to the southwest to look for approaching trains from that direction, but as she attempted to cross the " down main " one of the appellant's engines, approaching from the north, struck her, inflicting serious injuries.

The engine which collided with her was drawing a passenger train, and was running at the speed of eighteen or twenty miles an hour on the " down main," and was not ringing the

.Cleveland, Cincinnati, Columbus and Indianapolis R'y Co. v. Harrington.

bell. At the time of the accident there was an ordinance of the city of Indianapolis, in force, which prohibited the running of engines, within the corporate limits of the city, at a greater rate of speed than four miles an hour.

The appellee was familiar with the crossing, having passed over it frequently.

It is contended by the appellant that these facts and circumstances make a case in which the court is bound to adjudge, as matter of law, that the appellee was guilty of such contributory negligence as precludes her from recovering in this action, while on the other hand it is contended by the appellee that they make a case where the question of contributory negligence should be left to the jury, under proper instructions from the court.

It is not disputed or denied that the facts make such a case of negligence on the part of the appellant's employees as renders the appellant liable for the injury to the appellee, for which she sues, provided she was not guilty of any negligence which contributed to the injury.

The duty of a traveller approaching a point on a public highway where a railroad track is crossed upon the same level, has been so often declared by the courts in adjudicated cases and is so well settled and understood by the profession, that it needs no further elaboration. All that is necessary to do here is to refer to some of the cases in which that duty is discussed and defined, and by so doing avoid encumbering this opinion with useless repetition : *Ohio, etc., R. W. Co.* v. *Hill*, 117 Ind. 56 ; *Baltimore, etc., R. R. Co.* v. *Walborn*, 127 Ind. 142 ; *Mann* v. *Belt R. R., etc., Co.*, 128 Ind. 138.

Where one approaching a railroad crossing of the kind above indicated is injured, and the facts and circumstances are not controverted, and the inferences from such facts and circumstances are unequivocal, and can lead to but one conclusion, the court will declare, as matter of law, whether the party injured was, or was not, guilty of contributory negligence ; but, in practice, it often occurs that the facts and

circumstances surrounding a particular case are such as to warrant different inferences, so that one impartial sensible man may draw the inference and conclusion that the injured party was guilty of negligence, while another man equally impartial and sensible might draw a different conclusion; and in such cases the courts will not adjudge the question of negligence, but will leave it to the jury, under proper instructions. *Baltimore, etc., R. R. Co.* v. *Walborn, supra; Mann* v. *Belt R. R., etc., Co., supra.*

The question with which we are confronted is as to which of these classes the case under consideration belongs.

It can not be said that the appellee exercised no care to avoid the collision described in the complaint. It is evident from the facts and circumstances above set forth that very few seconds intervened between the time she looked north for approaching trains and the time at which she was struck. Of course, it was her duty to look south as well as north, and while doing so and attempting to cross the tracks she was struck by an engine approaching from the north which was not in sight a few seconds before. Had the engine which collided with her been run at the speed fixed by the city ordinance above mentioned, it is quite probable that she would have crossed the appellant's railroad tracks in safety.

While the general rule is that trains may be run at a very high rate of speed without the imputation of negligence, it must be apparent to every one, upon a moment's reflection, that populous cities constitute an exception to the rule, by reason of the great danger to life and limb. *Philadelphia, etc., R. R. Co.* v. *Long,* 75 Pa. St. 257; Wharton Negligence, section 803; *Loucks* v. *Chicago, etc., R. R. Co.,* 31 Minn. 526.

In the absence of some evidence to the contrary, we think the appellee had the right to presume that the appellant would obey the city ordinance and would not run its trains at a greater rate of speed than four miles an hour at the point where the injury occurred, and while the wrongful conduct of the appellant in this regard would not excuse her from

Cleveland, Cincinnati, Columbus and Indianapolis R'y Co. v. Harrington.

the exercise of reasonable care, yet in determining whether she did use such care her conduct is to be judged in the light of such presumption. If when she looked to the north four hundred feet and saw no train, she knew that she could cross the tracks in safety before a train running at the speed fixed by the city ordinance could reach her from that direction, it would be a harsh rule which would adjudge her guilty of negligence because she was struck by a train moving nearly five times as fast as the speed fixed by the ordinances of the city, which she had a right to presume the appellant would obey. *Chicago, etc., R. R. Co.* v. *Boggs,* 101 Ind. 522; *Pittsburgh, etc., R. W. Co.* v. *Yundt,* 78 Ind. 373; *Ohio, etc., R. W. Co.* v. *Collarn,* 73 Ind. 261; *Pittsburgh, etc., R. W. Co.* v. *Martin,* 82 Ind. 476; *Pennsylvania R. R. Co.* v. *Ogier,* 35 Pa. St. 60; *Kennayde* v. *Pacific R. R. Co.,* 45 Mo. 261; *Tabor* v. *Missouri, etc., R. R. Co.,* 46 Mo. 353; *Chaffee* v. *Boston, etc., R. R. Co.,* 104 Mass. 108; *French* v. *Taunton, etc., R. R. Co.,* 116 Mass. 537; *Howland* v. *Union St. R. W. Co.,* 22 N. E. Rep. 434; *Piper* v. *Chicago, etc., R. W. Co.,* 77 Wis. 247; *Laverenz* v. *Chicago, etc., R. R. Co.,* 56 Iowa, 689; *Schmidt* v. *Burlington, etc., R. W. Co.,* 75 Iowa, 606.

In our opinion the decided weight of authority is that under the facts and circumstances in this case the question of contributory negligence was a question for the jury under proper instructions from the court. *Baltimore, etc., R. R. Co.* v. *Walborn, supra; Ernst* v. *Hudson, etc., Co.,* 35 N. Y. 68; *Greany* v. *Long Island R. R. Co.,* 101 N. Y. 419; *McKee* v. *Bidwell,* 74 Pa. St. 218; *Detroit, etc., R. R. Co.* v. *Van Steinberg,* 17 Mich. 99; *Ireland* v. *Oswego, etc., Co.,* 13 N. Y. 533; *Central R. R. Co.* v. *Moore,* 24 N. J. L. 824; *Barbe* v. *Bassett,* 29 N. W. Rep. 198; *Chicago, etc., R. R. Co.* v. *O'Conner,* 119 Ill. 586; 2 Thompson Trials, section 1663; *City, etc.,* v. *Boeckling,* 122 Ind. 39.

The instructions in this cause are full, covering every phase

of the case, and bear evidence of careful study and preparation. They cover all the instructions asked by the appellant, in so far as the instructions asked contain a correct statement of the law. Some of the instructions asked, as well as some of those given by the court, however, require a more particular notice in this opinion.

The appellant, in several instructions, asked the court to instruct the jury, in effect, that if the appellant did not look for approaching trains when she was within ninety feet of the track upon which she was injured, or within thirty-seven feet or twenty-five feet, or just before she entered upon the track, she was guilty of contributory negligence, and could not recover. The court refused to give these instructions, and instructed the jury as follows : " I can not say, as a matter of law in this case, at what particular place or distance from the said railroad track, or at what point it was her duty to look either way, or to listen ; but it would not be sufficient to look and listen only away from the presence of danger, but before placing herself in peril she was bound to listen and look for coming trains of cars, that might come from either way ; and if she did not so look and listen, and if doing so would have been available for safety, or if she was not otherwise in the exercise of ordinary care, as I have defined it to be, she can not recover in this action," etc.

In this ruling we are of the opinion the court did not err. Under the facts and circumstances in this case we do not think any exact point could be fixed, as the point of danger at which the appellee was bound to look and listen. If she failed to look at the distance of ninety feet from the track, but did look at the distance of eighty-nine feet, or if she failed to look at a distance of thirty-seven feet from the track, but did look at a distance of thirty-five feet, or if she looked when within five feet of the track and saw no approaching train, but did not look at the moment she was stepping upon the track, we do not think it could be plausibly contended that she was guilty of contributory negligence

Cleveland, Cincinnati, Columbus and Indianapolis R'y Co. *v.* Harrington.

because she did not look at the precise points indicated in the instructions asked. What the law requires, and all it does require, is, that a person approaching a railroad crossing upon a public highway shall use ordinary care to avoid injury. As to what constitutes ordinary care in such cases, as we have already said, is fully defined and settled by the authorities to which we have referred.

The appellant also complains that the court, in its instruction to the jury, upon the subject of the duty of the appellee in approaching the crossing at which she was injured, was not sufficiently specific, and should have employed the terms used in the instructions asked by the appellant. We do not think this objection is well taken. It is well settled that if the substance of an instruction asked is given by the court, of its own motion, in its own language, there is no available error in refusing to give the instruction as asked. *Town of Martinsville* v. *Shirley*, 84 Ind. 546 ; *Everson* v. *Seller*, 105 Ind. 266 ; *Sherman* v. *Hogland*, 73 Ind. 472.

We have carefully examined all the instructions given by the court, in this case, as well as all those asked by the appellant and refused by the court, and we do not think there was any error committed in giving or refusing instructions.

On the trial of the cause the appellee introduced in evidence an ordinance of the city of Indianapolis limiting the speed of engines and trains within the corporate limits of this city to four miles an hour.

The appellant offered to prove:

*First.* That four miles an hour was an unreasonable rate of speed at the place where the accident occurred, and that the ordinance was for that reason void.

*Second.* That by the terms of the appellant's charter it was not subject to the restrictions imposed by the ordinance, the charter giving the appellant the power to regulate the time and manner which cars and railroad vehicles travel and property should pass over its road.

*Third.* That by common consent the officers and citizens

of the city of Indianapolis had never enforced the ordinance, although the same had been frequently violated, and that by reason of that fact the ordinance had lapsed by common consent, and had become obsolete.

The case of *Coal-Float* v. *City of Jeffersonville*, 112 Ind. 15, we think is decisive of the first question presented. The ordinance in question was passed in the year 1866. There was a statute in force, at the time, which expressly conferred the power to pass such an ordinance. 1 G. & H. 226.

In the case above referred to it was said by this court: " The power of a court to declare an ordinance *unreasonable*, and, therefore, void, is practically restricted to cases in which the Legislature has enacted nothing on the subject-matter of the ordinance, and, consequently, to cases in which the ordinance was passed under the supposed incidental power of the corporation merely."

As this ordinance was enacted by express statutory authority, the court did not err in taking it as the standard of duty by which the appellant was bound, and in refusing to hear evidence that it was unreasonable.

The State could not deprive itself of the right to exercise the police power by granting to the appellant the right to regulate the speed of trains. Such a grant, even if it could be construed as contended here, would amount to a mere license, which might be revoked at the will of the Legislature. *State* v. *Woodward*, 89 Ind. 110.

The police power of a State can not be alienated even by an express grant upon a valuable consideration. Cooley Constitutional Limitations, 340 ; *Thorpe* v. *Rutland, etc., R. R. Co.*, 27 Vt. 140.

The ordinance now under consideration is a police regulation, authorized by an act of the Legislature, designed to protect the people of the city of Indianapolis against the dangers incident to the rapid movement of engines and trains through thickly populated localities, and is binding upon the

appellant as well as other railroad companies which have tracks within the corporate limits of the city.

The fact that the appellant and others had not been prosecuted for repeated violations of this ordinance would not, in our opinion, tend to prove that it had been abandoned. Such proof might tend to show that those charged with the enforcement of the ordinances of the city had been derelict in their duty, but that could not deprive any citizen who desired to do so from the right of availing himself of its provisions when occasion should require it.

After a careful consideration of all the matters complained of, we are of the opinion that there is no error in the record before us for which the judgment should be reversed.

Judgment affirmed.

Filed Feb. 16, 1892; petition for a rehearing overruled April 29, 1892.