MALOTT, RECEIVER OF THE TERRE HAUTE AND INDIANAPOLIS RAILROAD COMPANY, *v.* HAWKINS, ADMINISTRATRIX.

[No. 19,532. Filed March 21, 1902. Rehearing denied June 20, 1902.]

RECEIVERS.—*Actions Against.*—*Leave of Court.*—Under act of congress, 25 U. S. Stat., p. 436, the receiver of a railroad company appointed by the United States Court may be sued for damages for negligent killing in a state court without leave of the court making the appointment. *pp. 130, 131.*

RAILROADS.—*Highway Crossings.*—*Contributory Negligence.*—*Instructions.*—The law has marked out with such precision the quantum of care that a traveler must exercise in passing over a crossing that the court in instructing the jury should not stop with the generality that such person must use ordinary care for his own

159  127
160  152

159  127
d162  248

159  127
c163  615

159  127
164  374

159  127
f168  252

159  127
169  460

safety, but it should instruct the jury as to some, at least, of the duties of the traveler.  *p. 134.*

RAILROADS.—*Highway Crossings.*—*Degree of Care Required of Traveler.*— One about to cross a railroad grade crossing, except where a flag-man signals him to cross, must look and listen for approaching trains, and, under exceptional circumstances, stop.  *p. 134.*

SAME.—*Highway Crossings.*—*Duty to Look and Listen.*—*Presumption.*— The law will presume that one about to cross a railroad at grade actually saw what he could have seen if he had looked, and heard what he could have heard if he had listened.  *p. 134.*

SAME.—*Highway Crossings.*—*Selection of Position to Look and Listen.*— A traveler approaching a railroad crossing is required to exercise ordinary care to select a place to look and listen for approaching trains where the acts of looking and listening will be reasonably effective.  *pp. 134, 135.*

SAME.—*Highway Crossings.*—*Reciprocal Rights.*—Where a traveler at a public crossing has vigilantly used his senses to avoid danger, and is unable to see or hear an approaching train, he may, while still exercising due care, assume that the company will not omit to give the usual signal, if a train is approaching, especially the statutory signals.  *p. 135.*

CONTRIBUTORY NEGLIGENCE.—*Mixed Question of Law and Fact.*—*Rail-road Crossings.*—While §359a Burns 1901, placing the burden of proving contributory negligence in personal injury cases upon the defendant does not abate the legal requirements as to the care that a traveler crossing a railroad track must use, nor change the rule that it is presumed that the traveler saw and heard, or was heedless of that which as an ordinarily prudent man, he ought to have taken notice of; but where the question as to contributory negligence stands as a mixed question of law and fact, the statute may have the effect of requiring such question to be submitted to the jury.  *pp. 135-137.*

APPEAL AND ERROR.—*Instructions.*—*Exception.*—An exception to an instruction by a written indorsement on the margin thereof in the words:  "Given and excepted to at the time by the defend-ant," signed by the judge, is not a sufficient compliance with §544 Burns 1901 providing the manner of reserving exceptions to the giving or refusing of instructions without a bill of exceptions, where the indorsement was not dated.  *pp. 137-139.*

From Marion Superior Court; *J. M. Leathers*, Judge.

Action by Elizabeth Hawkins, administratrix of the estate of Addis Hawkins, deceased, against Volney T. Malott, as receiver of the Terre Haute and Indianapolis Railroad Company for damages for the negligent killing

of decedent. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*J. G. Williams* and *D. P. Williams*, for appellant.

*A. C. Ayres, A. Q. Jones, J. E. Hollett* and *C. A. Dryer*, for appellee.

GILLETT, J.—The above named appellee commenced this action in the court below against the above named appellant to recover damages for the alleged negligent killing of her decedent. The appellee recovered a judgment upon her complaint, and from said judgment the appellant prosecutes this appeal.

In addition to the general denial, the defendant filed a special answer by way of a plea to the jurisdiction of said court. A demurrer was sustained to the latter paragraph, to which ruling the appellant duly reserved an exception, and assigns error upon the ruling. This paragraph of answer alleges, in substance, that the sole purpose of the action is the recovery of a judgment against a fund in appellant's custody, as receiver, and the payment of such judgment out of such fund; that such fund came into his custody by virtue of a decree, duly entered by the circuit court of the United States for the district of Indiana, appointing him receiver of said company, an insolvent corporation, in an action having for its ultimate purpose the marshaling of its assets and liabilities, the sale of such assets, and the distribution of the proceeds thereof, and the payment of its liabilities; that he is in custody and control of all of the property and assets of said company, and is administering the same, solely under the orders and decrees of said court, and that the appellee brought and was prosecuting this action wholly without leave of the court which appointed him, and that appellant, as said receiver, claimed immunity for such fund from any interference by the Marion Superior Court.

Malott v. Hawkins.

In the year 1887, congress enacted a statute which provides as follows: "That every receiver or manager of any property appointed by any court of the United States may be sued in respect of any act or transaction of his in carrying on the business connected with such property, without the previous leave of the court in which such receiver or manager was appointed; but such suit shall be subject to the general equity jurisdiction of the court in which such receiver or manager was appointed, so far as the same shall be necessary to the ends of justice." 25 U. S. Stat., p. 436. We do not understand that the question now before us is substantially different from the question determined by this court adversely to appellant in the case of *Malott v. Shimer,* 153 Ind. 35, 74 Am. St. 278, except that the question was there raised by demurrer, instead of by answer. Since that case was decided, however, the whole matter has been put at rest by the decision in the case of *Gableman* v. *Peoria, etc., R. Co.,* 179 U. S. 335, 338, 21 Sup. Ct. 171, 45 L. Ed. 220. It was there said: "This act abrogated the rule that a receiver could not be sued without leave of the court appointing him, and gave the citizen the unconditional right to bring his action in the local courts, and to have the justice and amount of his demand determined by the verdict of a jury. He ceased to be compelled to litigate at a distance, or in any other forum, or according to any other course of justice, than he would be entitled to if the property or business were not being administered by the federal court. * * * As, however, the receiver, as the officer of the court, holds the property for the benefit of all who have an interest in it, and is not to be interefered with in its administration and disposal by the judgment or process of another court, the closing clause of the section, out of abundant caution, provides that when the receiver is sued, without leave, 'such suit shall be subject to the general equity jurisdiction of the court in which said receiver or manager was appointed, so far as the same

shall be necessary to the ends of justice.' Of course it de-volves on the court in possession of the property or funds out of which judgments against its receiver must be paid to adjust the equities between all parties, and to determine the time and manner of payment of judgment creditors necessarily applying for satisfaction from assets so held to the court that holds them. But, as we observed in *Texas, etc., R. Co.* v. *Johnson,* 151 U. S. 81, 103, 14 Sup. Ct. 250, 38 L. Ed. 81, 'the right to sue without resorting to the ap-pointing court, which involves the right to obtain judg-ment, can not be assumed to have been rendered practically valueless by this further provision in the same section of the statute which granted it.' " The demurrer to the sec-ond paragraph of answer was properly sustained.

Under an assignment of error that the court below erred in overruling appellant's motion for a new trial, the appel-lant next urges that Addis Hawkins, for whose death this action was brought, was so manifestly guilty of contribu-tory negligence that the appellant's request for a peremp-tory instruction to the jury to find in his favor should have been granted. Looked at in a light most favorable to ap-pellee, as it is our duty to do on appeal, the evidence shows the following facts and circumstances relative to the death of appellee's decedent: Said decedent and his son, a young man, left their home, which was situate a few miles from the city of Indianapolis, to go to said city, shortly after five o'clock, on the morning of February 9, 1898. They drove one horse attached to a covered buggy. The horse was a slow traveler, and the buggy rattled. The morning was dark and foggy, and it had been raining. Their road to the city was along a highway, termed the Morris pike. This road extended east and west, and it was crossed at what was called "Wright's crossing" by said railroad. The lines of said railroad and of said highway, as they extend to said crossing, constitute rather an acute angle. Decedent and his son, in proceeding to said city, were required to travel

east along said highway, and close to the north rail of said railroad,· until the railroad and highway intersected at said crossing. To the west of said crossing the highway had been worked and traveled to a width of sixteen or eighteen feet. The railroad company, as the second comer, had undertaken to discharge its statutory duty of restoring the highway, by putting planks across it at the intersection to a width of ten or twelve feet. It had, however, put said planking ·twenty and one-half feet farther east than was proper, in view of the intersection of the highway and the railroad, with the result that a person crossing the railroad at that point would require a few more seconds to cross the right of way than would be required if the highway had been properly restored. Decedent and his son reached said crossing about 5 :35 a. m. They were last seen in life by a witness named Smith, who testified that they passed him on the highway, and that when they were seventy or seventy-five feet from the crossing and twenty-five feet from the north rail of the railroad track, he noticed that the buggy was stopped, and he saw the light cap of the younger man above the top of the buggy cover. The witness was permitted, without objection, to express the opinion that he thought they were looking for a train. A passenger train was in point of fact coming from the west. There is evidence that it approached and passed over said crossing at the rate of sixty-five miles an hour; that the locomotive had no headlight, and that the statutory signals were not given. ·The witness whose testimony we have mentioned above, who claims to have been afoot, further testified that when he saw the younger man looking, as he supposed, for a train, he also looked in the same direction, and also listened, but that he did not hear or see any train at the time; that before he had taken many more steps he heard the train coming, and, looking around, was able to see the front part and the side of the locomotive and "a little bit of light in the coaches, shining out like." One witness, who was at work

at the time, testified that it was so dark that a horse and vehicle could not be seen at a greater distance than thirty feet. A number of other witnesses testify to seeing the lights in the windows of the coaches, but all of them, unless it be the witness whom the buggy passed, occupied positions where they could better observe said lights than the decedent and his son, because they were at points farther from the track. It also appears that a number of said witnesses heard the noise of said train. The wind was blowing from the northeast. Both the decedent and his son possessed the usual human capacity to see and hear. The track was straight. There was a heavy down grade to the east, and a locomotive headlight could be seen from the crossing for the distance of a mile to the west thereof, and we think that there was evidence from which the jury might have inferred that a headlight could have been seen for that distance to the west, at the point where the younger man apparently looked back. The locomotive collided with the conveyance at the crossing. Both men and the horse were killed by such collision, and their bodies were found at considerable distances to the east of the crossing, those of the two men on one side of the track, and that of the horse on the other.

There is very little of difficulty in the determination of the law in such a case as this. The difficulty arises in the application of the law to the facts. The rights of a traveler and of a railway company, at a point where a railway and a highway intersect, have been said to be "mutual, coëxtensive, and in all respects reciprocal." Rorer, Railroads, 531; Elliott, Railroads, §1153. But owing to the momentum of trains, the confinement of their movement to a track, and the necessities of railway traffic, the traveler must yield precedence in the right of passage. *Ohio, etc., R. Co.* v. *Walker,* 113 Ind. 196, 3 Am. St. 638, and cases cited.

A grade crossing is in itself, to a person acquainted with its existence and about to pass over the same, a warning of danger, and as a result the law has marked out the *quantum* of care that he must exercise with more precision than would be possible in most cases where the question of contributory negligence is involved. In cases of this character, a trial court should not, in instructing the jury upon the duty of the person injured or killed, stop with the generality that such person was required to use ordinary care for his own safety, but it should instruct the jury as to some, at least, of the duties of a person about to cross a railway track upon a highway.

The statement, so frequently found in the authorities, that a traveler must look and listen, is one that especially applies to a case of this kind. *Cincinnati, etc., R. Co.* v. *Howard,* 124 Ind. 280, 8 L. R. A. 593, 19 Am. St. 96; *Louisville, etc., R. Co.* v. *Stommel,* 126 Ind. 35; *Smith* v. *Wabash R. Co.,* 141 Ind. 92; *Engrer* v. *Ohio, etc., R. Co.,* 142 Ind. 618; *Oleson* v. *Lake Shore, etc., R. Co.,* 143 Ind. 405, 32 L. R. A. 149; *Lake Erie, etc., R. Co.* v. *Stick,* 143 Ind. 449; *Pittsburgh, etc., R. Co.* v. *Fraze,* 150 Ind. 576, 65 Am. St. 377. Exceptional circumstances may also require him to stop, although this proposition generally presents itself as a mixed question of law and fact. Elliott, Railroads, §1167; *Cincinnati, etc., R. Co.* v. *Howard, supra; Louisville, etc., R. Co.* v. *Stommel, supra; Chicago, etc., R. Co.* v. *Thomas,* 155 Ind. 634.

As a corollary of the proposition that the traveler must look and listen, it follows that "the law will assume that such person actually saw what he could have seen, if he had looked, and heard what he could have heard, if he had listened." *Pittsburgh, etc., R. Co.* v. *Fraze, supra.* The traveler is also required to exercise ordinary care to select a place to look and listen where the acts of looking and listening will be reasonably effective. Elliott, Railroads, §1166. It is not ordinarily possible, however, to

affirm, as a matter of law, the precise number of feet from the crossing at which the traveler must look and listen, the underlying test being, did the traveler exercise ordinary care, in view of the danger, in selecting the place. *Cleveland, etc., R. Co.* v. *Harrington,* 131 Ind. 426; *Chicago, etc., R. Co.* v. *Thomas, supra.*

A further proposition, based on the reciprocal rights of the railway company and a traveler at a public crossing, is that after a traveler has vigilantly used his senses to avoid danger, as stated above, and is unable to see or hear any approaching train, he may, while still exercising due care, assume that the company will not omit to give the usual, and especially the statutory signals, if a train is really approaching. Elliott, Railroads, §1158; *Pittsburgh, etc., R. Co.* v. *Martin,* 82 Ind. 476; *Chicago, etc., R. Co.* v. *Boggs,* 101 Ind. 522, 51 Am. Rep. 761; *Terre Haute, etc., R. Co.* v. *Brunker,* 128 Ind. 542; *Pittsburgh, etc., R. Co.* v. *Burton,* 139 Ind. 357; *Baltimore, etc., R. Co.* v. *Conoyer,* 149 Ind. 524. The omission to give signals may, therefore, be an element in determining the question of contributory negligence.

Where the facts and circumstances surrounding a particular case are such as to warrant different inferences, so that an impartial, sensible man may draw the inference and conclusion that the injured person was guilty of contributory negligence, while another man, equally sensible and impartial, might draw a different conclusion, such question is one that, under appropriate instructions as to the law, should be submitted to a jury *Baltimore, etc., R. Co.* v. *Walborn,* 127 Ind. 142; *Mann* v. *Belt R. Co.,* 128 Ind. 138; *Cleveland, etc., R. Co.* v. *Harrington, supra; Young* v. *Citizens St. R. Co.,* 148 Ind. 54; *Louisville, etc., R. Co.* v. *Williams,* 20 Ind. App. 576.

One more proposition of law remains to be considered in applying the law to the question in hand, and that is the effect of the act of February 17, 1899 (§359a Burns 1901,

§284a Horner 1901), relative to the burden of proof as to contributory negligence in cases of death or injuries to persons, occasioned by negligence. Appellant's counsel submits a learned argument upon the proposition that said act is unconstitutional, but in view of the recent decisions of this court to the contrary, we do not feel called upon to discuss the question. See *Indianapolis St. R. Co. v. Robinson,* 157 Ind. 414; *Southern Ind. R. Co.* v. *Peyton,* 157 Ind. 690. This statute can not be held to abate the legal requirements as to the care that a traveler crossing a railroad track must use, and it does not change the rule that it is presumed that the traveler saw and heard, or was heedless of, that which, as an ordinarily prudent man, he ought to have taken notice of, but it is evident that in many cases where the question as to contributory negligence stands as a mixed question of law and fact, the statute may have an important bearing upon the legal aspect of such cases. As applied to this case, it is evident that the statute is a very considerable factor. As stated before, there is evidence that the buggy was stopped, and it may be inferred that the son looked and listened when he and his father were from seventy to seventy-five feet from the crossing and twenty-five feet from the track. They drove on, and after the time that the witness Smith ceased to hear the buggy rattling, as it went east, the line of continuity is broken until the men are found dead upon the railroad right of way.

Can there be a recovery by the appellee in this case, under the rules of law above stated? We are of the opinion that the evidence warranted such a result, in view of the burden of proof being upon the appellant on the question of contributory negligence. These men were compelled to drive almost in the same direction that the train was going, and for a number of feet they were compelled to drive in very close proximity to the track; their buggy cover was up; it was dark and foggy, and their buggy rattled. It is not difficult to understand how they might have stopped and looked

Malott v. Hawkins.

.and listened at a proper distance, and placing some degree of reliance upon the fact that they did not see a headlight, and did not hear the whistle sounded between eighty and one hundred rods from the crossing, and did not hear the bell rung, as it is required to be, from the time the whistle should have been sounded until the crossing was reached, that they might have, while exercising due vigilance, been deceived by the negligent omission of the company, and been overtaken upon the crossing by this train that, if it was running at the rate of sixty-five miles per hour, was running ninety-five and one-third feet per second, or a quarter of a mile in less than fourteen seconds. We have not failed to consider the fact that we have held that we judicially know that trains create no inconsiderable noise in their movement, and that it is evident that for some considerable distance such noise can be heard, but in view of the character of the approach to the crossing, occasioning a few seconds' delay when decedent and his son could not well stop and listen or readily turn back, and in view of the swift approach of the train, with the direction of the wind unfavorable for hearing, we have concluded that the question whether the decedent ought to have heard the approach of the train in time to have avoided the collision was a question that was properly submitted to the jury.

We do not feel justified in discussing at length whether the evidence sustained the complaint in its general scope and theory, if construed according to the rule laid down in *Terre Haute, etc., R. Co.* v. *McCorkle,* 140 Ind. 613. There is a marked distinction between the complaint in that case and in this. In our judgment there is evidence sufficient to support the verdict.

Counsel for appellant urge that the trial court erred in giving each of a number of instructions. It is the claim of opposite counsel that the exceptions to the instructions are not in the record. The method pursued by the appellant in his effort to reserve such exceptions was to have the trial

judge indorse upon the margin of each instruction the words: "Given and excepted to at the time by the defendant. James M. Leathers, Judge." The statute upon the reserving of exceptions to the giving or refusal of instructions, without a bill of exceptions, is as follows: "A party excepting to the giving of instructions, or the refusal thereof, shall not be required to file a formal bill of exceptions; but it shall be sufficient to write on the margin or at the close of each instruction 'refused, and excepted to,' or 'given, and excepted to;' which memorandum shall be signed by the judge, and dated." §544 Burns 1901, §535 Horner 1901. In *Behymer* v. *State,* 95 Ind. 140, 142, it was said of this section of the code: "Under this section, the date is quite as material as the signature of the judge, *first,* because they are both required by the statute; and, *second,* because it is the date that shows when the exception was taken. It takes the place of the statement in the bill of exceptions, that the exception was taken at the time." In *Roose* v. *Roose,* 145 Ind. 162, 164, it was said: "The instructions given by the court are all open to the same objection. The only statement to show that exceptions were taken to the latter, is the following at the close thereof: 'To the giving of each of the above instructions, severally, plaintiff, at the time, duly excepted.' This was not in compliance with the requirements of the section of the code to which we have referred, so as to be available to the complaining party. The exception must be noted, either on the margin or at the close of each instruction, which written notation must be dated and signed by the trial judge. This the statute requires in plain imperative terms not open to construction." The statute has provided a most simple method of reserving exceptions to instructions given or refused, but the requirement of the statute that the marginal notation of the judge shall be dated is not open to construction. We have no disposition to be unduly technical, but we believe that this statute should be preserved in its simplicity, and that

when once we recognize that there is some equivalent method of reserving exceptions under this section of the code, we will find a multitude of border line questions springing up that will unsettle a matter of practice that is now so plain that the practitioner need not err therein.

We have now considered the various questions presented by the record in this cause, and we find no error.

Judgment affirmed.