Lynch, Special administratrix, Respondent, vs. Chicago, Milwaukee, St. Paul & Pacific Railroad Company, Appellant.

*January 12—February 9, 1932.*

For the appellant there were briefs by *Bender, Trump, McIntyre & Freeman* of Milwaukee and *Sanborn, Blake & Aberg* of Madison, and oral argument by *Rodger M. Trump* and *John B. Sanborn.*

For the respondent there was a brief by *Alfred H. Bushnell* of Madison and *Clancey, Loverud & Loverud* of Stoughton, and oral argument by *Mr. Bushnell* and *Mr. Alvin M. Loverud.*

FAIRCHILD, J. The law imposing upon one crossing a railroad track the duty of exercising his senses to ascertain whether he may pass over the track at that instant in safety has been frequently declared. Its purpose to promote the safety of those on the highway and those in the train and at the same time provide for acceptable service to our citizens using the railroads is apparent and has been discussed in

many cases. *Rohde v. Chicago & N. W. R. Co.* 86 Wis. 309, 56 N. W. 872; *Gundlach v. Chicago & N. W. R. Co.* 172 Wis. 438, 442 (and cases cited), 179 N. W. 577, 985; *Rusczck v. Chicago & N. W. R. Co.* 191 Wis. 130, 210 N. W. 361; *Waitkus v. Chicago & N. W. R. Co.* 204 Wis. 566, 236 N. W. 531, 237 N. W. 259.

Each crossing accident presents its own story and arises from a condition out of which facts must be gathered to enable the court to determine whether the traveler was negligent or was relying on facts which reasonably indicated he might cross in safety. The traveler has the advantage of the warning the presence of the track gives, and because he has this, and the ability more readily to control his course than has he who is in charge of the train, the duty of living up to the requirements fixed by law is exacted from him. There are, however, peculiar circumstances arising at times under which one having been injured by unfortunately relying on acts of the railroad company may recover damages, and the case at bar is one of that character.

Decedent's opportunity to see the coming train in time to so act as to prevent injury to himself is established and it is also established that the automatic signals were in operation. There is a sharp dispute in the testimony as to whether the signals by the flagman were given as described by the witnesses Furan and his wife; but the jury in its province found that the flagman signaled the travelers to proceed across the railway tracks, and this finding is controlling. The giving of the signals by the flagman tended to lessen the control the automatic signal and other circumstances would have had if the flagman's signal to go ahead had not been given. Therefore under the evidence there was a jury question as to whether or not the decedent was guilty of more than a slight want of ordinary care in reading the motions of the flagman to go ahead as an assurance that he could pass in safety. The positiveness of duty on the part of a traveler to protect himself may be diminished to a point where the

traveler will not be guilty of more than a slight want of ordinary care when, in the presence of a railroad track and signals, he is guided by a direction to proceed given by one in charge of the crossing. Human experience warrants the conclusion, and the law is, that the acts of the defendant's agent under such peculiar circumstances may minimize the duty of the traveler to the extent stated. A train may be standing in the block and the signals operating, or it may be approaching a station for the purpose of stopping, and a signal from a flagman at the crossing to proceed could be obeyed without disastrous consequences. The traveler under those circumstances might not be guilty of a want of ordinary care, at any rate of more than a slight want of ordinary care, in relying on the sign from the flagman if the flagman mistakenly gave the wrong sign. *McGrath v. Minneapolis, St. P. & S. S. M. R. Co.* 195 Wis. 11, 216 N. W. 530. The absence of a signal from the flagman would present a very different proposition from the one we are considering. *Van Dunk v. Chicago & N. W. R. Co.* 188 Wis. 476, 206 N. W. 852. As was said by Mr. Justice ROSENBERRY in *Gundlach v. Chicago & N. W. R. Co., supra:*

"Travelers in approaching a highway do not act with mathematical precision and are held to no higher degree of care than that exercised by the great mass of mankind under the same or similar circumstances. . . . While a man may not rely upon reason, and fail to exercise his senses of sight and hearing in the presence of a known danger, yet, in determining whether or not he is guilty of a want of ordinary care, all the circumstances must be considered."

In discussing the *Gundlach Case* Mr. Justice OWEN, in *Waitkus v. Chicago & N. W. R. Co., supra,* said:

"The doctrine of that case is to the effect that the customary maintenance of a flagman at a crossing, such custom being known by the traveler, relieves the traveler of the absolute duty which the law imposes upon him to exercise

his senses to discover the approach of a train, and that when that circumstance appears his duty is that of exercising ordinary care. In such cases the railroad company shares with the traveler the absolute duty otherwise devolving on the traveler. However, before the duty of the traveler may be thus minimized, the circumstances must be such that the jury can find that the traveler placed some reliance upon the usual maintenance of the flagman."

The burden of establishing that decedent was guilty of more than a slight want of ordinary care was upon the appellant. There was testimony that the Furan car and the decedent's car slowed up as they approached the crossing and then started ahead. Under the findings of the jury the inference is that this starting ahead by the deceased was in reliance upon the signal given by the flagman, and under the evidence the jury was warranted in answering the questions as it did.

*By the Court.*—Judgment affirmed.