## LAUGHLIN v. CHESAPEAKE & O. RY. CO.
### No. 3501.

Circuit Court of Appeals, Fourth Circuit.
Jan. 4, 1934.

R. T. Hubard, of Fayetteville, W. Va. (Hubard & Bacon, of Fayetteville, W. Va., on the brief), for appellant.

C. W. Strickling, of Huntington, W. Va. (Jackson N. Huddleston and Fitzpatrick, Brown & Davis, all of Huntington, W. Va., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

■ This is an appeal in a crossing accident case in which verdict was directed for the defendant railway company. The evidence showed that an automobile driven by plaintiff's intestate was struck at an open public crossing near Helen, W. Va., by a train of cars which was being pushed ahead of an engine without ringing of bell, blowing of whistle, or other warning. There was evidence also tending to show that the intestate was signalled to cross by a brakeman stationed at the crossing. Defendant does not seriously contend that the evidence is not sufficient to establish negligence on its part, but takes the position that it conclusively shows contributory negligence on the part of plaintiff, and that verdict was properly directed for that reason. The rule is well settled, however, that the evidence must be viewed in the light most favorable to the party against whom verdict is directed, and, when the evidence here is considered in the light of this rule, we think there can be no question but that the case was one for the jury.

At the crossing where the fatal accident occurred there were four tracks running east and west. The highway upon which decedent was traveling ran north and south, and decedent was approaching the crossing from the north. Immediately west of the crossing the tracks turned sharply to the north with a twelve degree curve, and the cars were approaching the crossing around this curve. The track upon which decedent was struck was the main track, which was the southernmost of the four. The three other tracks were sidings; and upon the two of them farthest from the main track empty coal cars were standing on both sides of the crossing in such way as to obscure a view of the main track to one approaching from the north until after two of the sidings had been passed. A crew in charge of one of defendant's trains had been shifting cars across the crossing for about five minutes prior to the accident, and there is evidence tending to show that, as decedent approached from the north, she was stopped behind another automobile because the crossing was blocked by an engine and cars; that in a short time the engine and cars moved to the eastward, leaving the crossing open; that thereupon the brakeman standing at the crossing motioned the waiting au-

tomobiles ahead and told decedent to hurry; that decedent's automobile stopped as it reached the main track, and almost immediately was struck by the approaching cars. In the collision decedent received injuries which resulted in her death.

There was conflict in the evidence as to the conduct of the brakeman stationed at the crossing, his testimony being that he did not signal the waiting automobiles to cross, but did signal the conductor to bring on the cars, and that, when he saw decedent about to drive on the track, he signalled her to stop. Two witnesses in the car just ahead of decedent testified, however, that the brakeman did wave to them to cross, and that, after they had crossed, they saw decedent's car coming onto the crossing and heard the brakeman saying, "Hurry! hurry!" A lady riding with decedent testified that, when they were almost on the track, the brakeman said, "Hurry, lady! hurry!" And the testimony is that immediately after the injury, as decedent was lying bleeding between the tracks, she exclaimed, "Oh, Lordy, he waved me across."

▉ The law is well settled that a person is guilty of contributory negligence which bars recovery if, without looking and listening, he goes or drives on a railway crossing in front of an approaching train which he might have seen and avoided in the exercise of ordinary care. Baltimore & O. R. Co. v. Goodman, 275 U. S. 66, 48 S. Ct. 24, 72 L. Ed. 167, 56 A. L. R. 645; Atlantic Coast L. R. Co. v. McLeod (C. C. A. 4th) 11 F.(2d) 22; Auvil v. Western Md. R. Co. (C. C. A. 4th) 19 F.(2d) 30; Chesapeake & O. R. Co. v. Waid (C. C. A. 4th) 25 F.(2d) 366. And we have recently held that one is not absolved of all duty of looking and listening before driving upon a railroad track by reason of the fact that automatic signals with which the crossing is equipped do not give warning of danger. Calloway v. Penn. R. Co. (C. C. A. 4th) 62 F.(2d) 27.

▉▉ But the duty to look and listen may be so qualified by surrounding circumstances that the question of contributory negligence becomes one for the jury to determine. Chesapeake & O. Ry. Co. v. Waid, supra. And, unquestionably, the duty of looking and listening is qualified by the fact that one connected with the management of the train involved in the collision has given a signal inviting the traveler along the highway to proceed across, and the latter is not ordinarily to be held guilty of negligence as a matter of law in not stopping, looking, and listening before obeying the signal. Cunningham Hardware Co. v. L. & N. R. Co., 209 Ala. 327, 96 So. 358; Lake Erie & W. R. Co. v. Sanders, 72 Ind. App. 283, 125 N. E. 793. As was well said by Judge Thayer, speaking for the Circuit Court of Appeals of the Eighth Circuit, in Eddy v. Powell, 49 F. 814, 817, a case very similar to the case at bar, he is "not guilty of contributory negligence in crossing the track pursuant to the direction of a person who was connected with the management of the train, and presumptively knew whether it was about to move, unless he was himself aware of some danger, such as would have deterred a man of ordinary prudence from going forward in obedience to the signal."

Circumstances can be imagined under which a driver would be guilty of contributory negligence as a matter of law in driving on a track in response to a signal from a watchman or brakeman as where the danger was imminent and readily observable. But no such conditions existed here. The cars which struck decedent's automobile were approaching quietly from around a sharp curve, without the giving of any warning. Cars placed on adjoining sidings obscured the view; and the witness who was riding with decedent testifies that, after these were passed, she looked up the track and saw nothing, although she was on the side of the automobile nearest the approaching cars. The brakeman was ostensibly guarding the crossing; and, when he motioned the waiting automobiles ahead, the drivers had the right to assume, in the absence of anything appearing to the contrary, that it was safe for them to proceed. The rule properly applicable in such case was well stated by Judge Woolley in Philadelphia & R. Ry. Co. v. LeBarr (C. C. A. 3d) 265 F. 129, 132:

"When at a grade crossing, gates are raised or a flagman beckons a waiting traveler to come on, there is a representation that there is no approaching train within striking distance. It is in effect an invitation to cross; but one, however, by which the railroad company does not become the guardian of the traveler or an insurer of his safety. It is an invitation only to cross with due care, requiring on the part of the one accepting it the exercise of his sight, hearing, and such other factors of safety, as the situation and circumstances permit. While the law will not under all circumstances allow a person about to cross the tracks of a railroad to rely for his safety entirely upon the signal of gates or flagmen, neither will the law ignore the whole effect of such invitation. There-

244

fore, the traveler when responding to the invitation will not be held to the strict rule of instant and constant and extreme vigilance which is enforced against one who crosses in sole reliance on his own judgment."

See, also, on this point Farley v. N. & W. R. Co. (C. C. A. 4th) 14 F.(2d) 93; Delaware, L. & W. R. Co. v. Welshman (C. C. A. 3d) 229 F. 82, 85, L. R. A. 1916E, 816; Erie R. Co. v. Schultz (C. C. A. 6th) 183 F. 673, 675; Chicago & N. W. R. Co. v. Prescott (C. C. A. 8th) 59 F. 237, 23 L. R. A. 654; 52 C. J. 503, § 2069 (6), and notes in 15 L. R. A. (N. S.) 803, and 41 L. R. A. (N. S.) 355, 361 and cases cited.

One of the contentions of defendant is that the brakeman signalled to decedent to stop, and that her proceeding in the face of the signal may have been due to misunderstanding on her part. As pointed out above, however, there was positive evidence to the effect that the brakeman signalled the cars across, and that, instead of attempting to stop decedent, he was urging her to hurry. But, even if the evidence were that a signal of the brakeman was misunderstood by decedent, we think that the question of contributory negligence under the circumstances was clearly one for the jury. 52 C. J. 503, 504; Baltimore & O. R. Co. v. Walborn, 127 Ind. 142, 26 N. E. 207; New York, etc., R. Co. v. Randel, 47 N. J. Law 144; Lynch v. Chicago, M., St. P. & P. R. Co., 207 Wis. 111, 240 N. W. 794.

For the reasons stated, we think that the learned judge below erred in directing verdict for the defendant. The judgment will accordingly be reversed and the case remanded for a new trial.

Reversed.