The Ohio and Mississippi Railway Company *v.* Hill, Administratrix.

———◆———

No. 14,265.

THE OHIO AND MISSISSIPPI RAILWAY COMPANY *v.* HILL, ADMINISTRATRIX.

RAILROAD.—*Danger Signals.*—*Contributory Negligence.*—Although a railway company may be negligent in failing to give proper warning of the approach of a train, a person injured can not, nevertheless, recover unless it be affirmatively shown that he was free from contributory negligence.

SAME.—*Negligence per se.*—If, by looking, he could have seen an approaching train in time to escape, it will be presumed, in case he is injured by collision, either that he did not look, or, if he did look, that he did not heed what he saw. Such conduct is held negligence *per se.*

From the Clark Circuit Court.

*J. K. Marsh* and *W. H. Watson,* for appellant.

*F. B. Burke,* for appellee.

ZOLLARS, J.—David Hill received injuries, in a collision with one of appellant's engines, from which he died. This is an action by the administratrix to recover damages from the railway company.

The grounds upon which appellant's counsel contend that the judgment ought to be reversed are, that the complaint is insufficient; that the trial court erred in the giving and refusal of instructions; and that the verdict and judgment are not sustained by sufficient evidence.

Upon the view we feel constrained to take of the case, it will not be necessary for us to examine the first two grounds thus urged.

The undisputed facts in the case, as shown by the evidence, are these: The Ohio and Mississippi Railway, and the Jeffersonville, Madison and Indianapolis Railway, cross at right angles in the city of Jeffersonville. Parallel with the Ohio and Mississippi Railway is Illinois avenue, a public street. That street at the time of the injury complained of, and at this time, so far as shown, was, and is, unworked, and untravelled by vehicles. The two railways are connected by a double tracked " Y." The tracks of the " Y " were so separated that persons might walk between them. They crossed Illinois avenue diagonally, and upon a grade of some three or four feet above the surface of the balance of the street. It had been customary for years for the Jeffersonville, Madison and Indianapolis Railway Company to bring freight cars over from Louisville on its main track, and throw them in upon the " Y " to be taken up by the Ohio and Mississippi Railway Company and removed to its main track and placed in its trains. That was done by means of a switch engine passing back and forth over the " Y." It had for a long time been customary for that engine to be upon the " Y " at different hours in the day, to there avoid and take out the freight cars thus thrown in by the Jeffersonville, Madison and Indianapolis Railway Company, and especially in the evenings.

Hill, the decedent, had lived on Illinois avenue for about thirteen years, just opposite the point where the " Y " tracks crossed the avenue, his house being not more than twenty-five or thirty feet from the railroad. He had knowledge of

the custom of the railway company in the use of the switch engine upon the " Y " tracks in the removal of cars thrown in upon those tracks. When cars were thus being brought over by the Jeffersonville, Madison and Indianapolis Railway Company and thrown in upon the " Y " tracks, its passenger trains could not go out over the main track. On the evening of the injury to Hill, one of its passenger trains had pulled in upon the " Y " track farthest from his house, and was there awaiting the throwing in of the freight cars and the consequent clearing of the main track of obstructions. The train was composed of an engine, a baggage car and three coaches. It had so far passed over Illinois avenue that the rear end of the rear coach was about opposite to Hill's house. The steam escaping from the engine was making some noise. Some time after six o'clock, the switch engine had come upon the " Y " track nearest to Hill's house, and had stopped beyond the crossing of the avenue some little distance, and was also awaiting the throwing in of the freight cars. The rear end of the switch engine was towards the street crossing. Those in charge of the engine, and others, testified that it was lighted up by a head-light. Others testified that they did not see such a light upon the engine, either before or at the time of the collision with Hill. For the purposes of this decision, we may assume that this negative and positive testimony makes a conflict in the evidence, and that, because of that conflict, the evidence should be regarded as showing that the engine was without a head-light. Such were the positions of the train and switch engine when Hill reached his house in the evening, and when he left it immediately before his collision with the switch engine, on the first day of September. After having had his supper, he left the house and passed out through his gate on his way towards the " Y " tracks. It was then after night, but the switch engine could readily be seen from his house, and on his way to the " Y " tracks. Before reaching those tracks, the Jeffersonville, Madison and Indianapolis Railway Com-

pany threw a freight car in upon the " Y " track nearest to his house, and in order to avoid a collision with that moving car, the switch engine was started and moved across Illinois avenue.    Just as it reached that avenue, Hill stepped upon the track, and came in collision with it, and received the injuries from which he died.

There is evidence tending very strongly to show that he was not struck by the engine, but by the Jeffersonville, Madison and Indianapolis freight car so thrown in upon the " Y," and which was following close upon the switch engine.   But as there is a conflict in the evidence, and as it seems to be conceded that to justify a recovery by appellee it should be found that Hill was struck by the switch engine, we adopt that conclusion as an established fact in the case.

Those in charge of that engine, and others, testified positively that when it was started the whistle was sounded and the bell rung, and that at the time, and prior to being started, the escaping steam was making quite a noise.   Others testified that they neither heard a bell nor whistle.  Again, adopting the view of the evidence most favorable to the appellee, it may be assumed that the switch engine was started without sounding the whistle or ringing the bell.

As before stated, the switch engine, before and at the time it started, could readily be seen from Hill's house, and in passing over the short distance from the house to the tracks. His daughter, who remained in the house, both saw and heard it start on its way across the avenue.   His wife, who was in the yard at the house, heard the engine start and saw it when it struck him.

Upon the foregoing facts there can be no recovery in favor of appellee.   To hold that there can be would be to overthrow a long and settled line of cases in this court, which are supported by the cases elsewhere and by the law writers. The failure to sound the whistle and ring the bell upon the switch engine before starting across the avenue may be regarded as negligence on the part of appellant, but such neg-

ligence on its part is not sufficient of itself to authorize a recovery on the part of appellee.   In order to such a recovery, it must further appear from the evidence, that, in going upon the track, Hill was not guilty of negligence which contributed to his injury.   The evidence does not show that he was free from such contributory negligence.   On the other hand, following the rule laid down by the cases and law writers, the evidence affirmatively shows that he was guilty of negligence which contributed to his injury.   If before, and at the time of going upon the track, he had looked and listened, he could have both seen and heard the switch engine when it started, and as it moved on its way over the avenue. Others, much farther away, and out of all danger, and without any incentive to thus look or listen, both saw and heard it when it started and as it moved to and over the avenue.

Citing a multitude of cases in support of the text, and which do fully support it, Mr. Beach, in his work on Contributory Negligence, p. 191, section 63, thus states the rule : " When one approaches a point upon the highway, where a railway track is crossed upon the same level, it is his plain duty to proceed with caution, and if he attempts to cross the track, either on foot or in a vehicle of any description, he must exercise, in so doing, what the law regards ordinary care under the circumstances.   He must assume that there is danger, and act with ordinary prudence and circumspection upon that assumption.   The requirements of the law, moreover, proceed beyond the featureless generality that one must do his duty in this respect, or must exercise ordinary care under the circumstances.   The law defines precisely what the term ' ordinary care under the circumstances ' shall mean in these cases.   In the progress of the law in this behalf, the question of care at railway crossings, as affecting the traveller, is no longer, as a rule, a question for the jury.   The quantum of care is exactly prescribed as matter of law.   In attempting to cross, the traveller must listen for signals, no-

tice signs put up as warnings, and look attentively up and down the track. A multitude of decisions of all the courts enforce this reasonable rule. * * * * If a traveller, by looking, could have seen an approaching train in time to escape, it will be presumed, in case he is injured by collision, either that he did not look, or, if he did look, that he did not heed what he saw. Such conduct is held negligence *per se."*

Our cases support the rule as thus stated and laid down in the numerous cases cited, to its full extent. We do not think that it would be profitable to do more than cite some of the cases, without further comment. *Bellefontaine R. W. Co.* v. *Hunter,* 33 Ind. 335 ; *Cincinnati, etc., R. R. Co.* v. *Butler,* 103 Ind. 31 ; *Indiana, etc., R. W. Co.* v. *Greene,* 106 Ind. 279 ; *Belt R. R., etc., Co.* v. *Mann,* 107 Ind. 89 ; *Indiana, etc., R. W. Co.* v. *Hammock,* 113 Ind. 1.

Appellee's counsel seem to think that the present case does not fall within the rule laid down by the above authorities, by reason of the passenger train having been upon the track of the " Y " farthest from his house. That circumstance, in our judgment, can make no difference. Hill knew that it was the custom of the railway company to bring the switch engine in upon the " Y," to take out cars thrown in by the Jeffersonville, Madison and Indianapolis Railway Company. He knew that it would start as soon as such cars might be thus thrown in. Before and at the time he approached the track, the switch engine was in full view, and but a short distance away. The track upon which it was standing was the first one to be reached by him, if, indeed, he intended to cross the other at all, and that was the point of danger. He either did not look to discover the switch engine and its location, or carelessly and heedlessly went upon the track without any precaution for his safety.

There are cases where there may be a recovery, although the plaintiff may have gone upon the track without looking and listening for approaching trains, as the above stated rule

requires, as, for example, where, by the negligence or mis-
conduct of the railway company, another is suddenly put in
peril, and when in such peril, and acting under the impulse
of apparently well-grounded fear, seeks to escape; or where
the railway company, acting through its servants, by its own
negligent or wrongful acts or omissions, throws the plaintiff
off his guard; or where it so acts as to invite him to go upon
the track, or to create the impression that there is no danger,
when in fact there is.    Beach Cont. Neg., p. 71, section 23;
*Pennsylvania Co.* v. *Marion*, 104 Ind 239.

This case does not fall within any of the exceptions to the
general rule.    Hill was not put in peril by any negligence
or misconduct on the part of the railway company.

He was upon safe ground, and, with his eyes open, volun-
tarily walked into danger.    He was in no way invited to go
upon the track; nothing was done by the railway company
in any way calculated to create the impression that there
was no danger, nor was the railway company guilty of any
negligent or wrongful acts or omissions calculated to throw
him off his guard.    The passenger train was upon the far-
ther track, but it was there rightfully, and not by any neg-
lect or wrongful act.    It had been there many times before,
awaiting the clearing of the main track by the throwing in of
the freight cars.    It could not move out until after the freight
cars should be thrown in upon the track of the "Y," upon
which the switch engine was standing.    The track upon
which Hill was about to enter, and the switch engine upon
it, in full view, and in close proximity, were warnings to him
of the dangers which immediately beset him.    He was in no
danger from the train upon the other track; first, because
he had not reached it, and second, because, so far as shown,
he had no purpose to go upon or across it.

Without further extending the opinion, we feel constrained
to hold that the verdict and judgment are not sustained by
sufficient evidence, and to reverse the judgment for that

reason. It is not a case of conflicting evidence, but a case where there is a lack of evidence.

Filed Nov. 10, 1888; petition for a rehearing overruled Feb. 2, 1889.