[No. 336.  Decided April 30, 1892.]

ROSALINE AMY LEWIS AND HARRY. LEWIS, *a minor, by his guardian ad litem, Rosaline Amy Lewis, Respondents,* v. PUGET SOUND SHORE RAILROAD COMPANY, *Appellant.*

RAILROAD COMPANIES—INJURIES TO PERSONS ON TRACK—CONTRIBUTORY NEGLIGENCE.

In an action for the death of a person caused by the negligence of defendant railroad company, the plaintiff should be non-suited on the ground of contributory negligence where the evidence shows that   deceased was walking upon loose boards placed upon the ties along one side of defendant's track, which at this place was built on piles across mud flats, following a switch train that had just preceded him; that the train started back after switching some cars, but deceased kept on until the engine was close upon him when, in attempting to cross to planking upon the other side of the track, he slipped and fell under the wheels.

*Appeal from Superior Court, King County.*

The facts are stated in the opinion.

*White & Mundy,* for appellant.
*Wiley, Hale & Scott,* for respondents.

The opinion of the court was delivered by

STILES, J.—If we adopt fully the position of the respondents, in stating the law of contributory negligence, still it is out of the question to sustain the judgment entered on the verdict of the jury in this case.   One of the cases cited in support of the judgment is *Ohio, etc., Ry. Co. v. Hill,* 117 Ind. 56 (18 N. E. Rep. 461), and in that case is a strongly approved quotation from Beach on Contributory Negligence, § 63, where the rule as to persons crossing a railroad track is thus stated:

"When one approaches a point upon the highway, where a railroad track is crossed upon the same level, it is his plain duty to proceed with caution, and if he attempts to cross

the track, either on foot or in a vehicle of any description, he must exercise in so doing what the law regards ordinary care under the circumstances.   He must assume that there is danger, and act with ordinary prudence and circumspection upon that assumption.  .  .  .   The law defines precisely what the term 'ordinary care under the circumstances' shall mean in these cases.   In the progress of the law in this behalf, the question is no longer, as a rule, a question for the jury.   The question of care is exactly prescribed as matter of law.   In attempting to cross, the traveler must listen for signals, notice signs put up as warnings, and look attentively up and down the track.   A multitude of decisions of all the courts enforce this reasonable rule.  .  .  .  . If a traveler, by looking, could have seen an approaching train in time to escape, it will be presumed, in case he is injured by collision, either that he did not look, or, if he did look, that he did not heed what he saw.   Such conduct is negligence *per se*."

The deceased, Elijah J. Lewis, had his place of business fronting upon Railroad street in the city of Seattle.   The appellant's track coming from the south, lay diagonally across Railroad street, the easterly side line of which it left at about Washington street, and ran thence to and beyond Yesler avenue on its private right-of-way.   The streets and railroad tracks thereabout were all built on piling over the shoal waters of the bay.   On the west side of the track, between Washington street and Yesler avenue, the space to the dock line was planked over; but on the east side and between the rails there was no planking until a point was reached about one hundred feet south of Yesler avenue, whence it was planked north to the avenue and east several feet to certain buildings.   Where there was no planking the track was eight or ten feet above the mud flat below; and over this space the only footway, excepting that afforded by the ties, was made by laying down a row of loose boards on the eastern ends of the ties outside of the rail. Just at the south side of Yesler avenue there was a switch

connecting with the tracks of the Seattle, Lake Shore & Eastern Railway further to the north.

People were, with the knowledge of the railroad company, accustomed to make pretty much all of the planked spaces about there public thoroughfares, and there is no doubt that the company was bound to adhere to all the well known rules requiring extraordinary care in the operation of railroad trains through populous localities, and along parts of their own grounds which it is known that the public is in the habit of treating as highways. On Sunday, November 3, 1889, a clear, bright day, a switching engine came from the south pushing several freight cars, the head of the engine being to the north and next to the first car ahead of it. The train traversed the two hundred and forty feet between Washington street and Yesler avenue, and crossing the avenue set out two cars on the Seattle, Lake Shore & Eastern track. To do this the engine had to go quite to the north side of Yesler avenue, which is seventy feet wide. Another purpose of the switching was to leave the next two cars on appellant's own track north of the avenue, so that the train was at once backed to the switch, to clear which it had to move south about two hundred and fifty feet. In backing, at a place about one hundred and seventy feet south of the tail end of the engine when it started, it ran over deceased and caused the injuries from which he died. For the purposes of this case it will be conceded that no bell was rung or whistle blown warning deceased that the train was about to back. The usual testimony appears, viz., that of the engineer and fireman that the bell was rung and that of several other persons that they did not hear it.

The witnesses upon opposite sides totally disagree as to how the accident happened. Those for the respondent, if there is any difference, make a rather less favorable case to support the judgment than the other side. They say

that as soon as the train passed Washington street going north, the deceased and several other men started along behind it toward Yesler avenue, walking on the loose boards at the east end of the ties, and when the engine started back south the other men, who were ahead of deceased, stepped across the track to the planks on the west, while he kept on until the engine was so close to him that in attempting to cross he slipped and fell and the wheels caught him. It is an undisputed fact, however, that when the deceased fell he lay at a point beyond the end of the loose boards, and upon the planking where it extended south from Yesler avenue, and this either lends color to the truthfulness of appellant's witnesses, or it emphasizes the conduct of the deceased by showing that even if he came from the south he had reached a place before he was struck where he could have saved himself by stepping to either side of the track onto firm planking without any necessity for jumping down into the mud or water from the loose boards. This was the case for the respondents, and it is seen at once with what a degree of recklessness deceased must have acted. Suppose him to have been completely justified in walking on the loose boards instead of the planking not six feet away from his left hand; and let him be either close to or at a distance from the engine when it commenced to back; and admit that no bell was rung and no lookout kept; yet he was in a place with which he was perfectly familiar; he knew that this was a switching track mainly; that the train was a switching train; that it was liable to return at any time, as was the more evident from its position with reference to the cars; and that the place he was taking was, at that moment, a peculiarly dangerous one, involving the necessity of his getting over to the west side in a hurry, or dropping into the mud below. He, with others, took all these chances; yet, however fast the train ran backward, at least three men who were ahead of

deceased and nearer to it than he was, had abundant time to escape from precisely the same position as his, excepting that theirs was, perhaps, even more dangerous. Certainly if there be such a thing as contributory negligence, which is the proximate cause of an injury, this must be a case of it, for in its facts it stands next to a voluntary casting of one's body beneath the wheels of the train. No reasonable care on the part of the train operators could foresee such conduct on the part of a traveler, whom two ordinary steps would have taken out of harm's way.

We assume in this, of course, that deceased was looking in front of him. No witness says that he was looking any other way; and if he did look forward he must have seen what the other men saw in time to save themselves with ease, viz., the train backing down toward them more or less rapidly. The case was in this condition when the motion for non-suit was made, which should have been granted.

The defense made a different case in its facts entirely; for it was just as positively testified to by disinterested witnesses that deceased did not come from the south at all, but came down Yesler avenue on his way toward his place of business. They say he was on the south side of the avenue, and within a few feet of the track, when the engine began to back up, it being just the width of the avenue from him. He turned to the southward, parallel to the track, walked a little way, and when the engine could not have been more than eight or ten feet from him suddenly undertook to step across the track. Someone saw his danger and shouted to him to go back, and in turning to do so he slipped and was caught before he could get out of the way. There was a difference of opinion as to how fast the train was going at the moment when deceased stepped onto the track, but all agreed that it moved less than six feet from the place where he fell until it came to a dead stop. This appeared also by the fact that the man was run over

by but one wheel of the rear truck of the tender, he being taken from between the two wheels after the train stopped. The case of the defense was more favorable to the respondents than their own, because from it it would seem that deceased had his back to the train until he turned to cross the track. But that position did not absolve him from looking in the direction whence he could have seen the danger in full time to have avoided it.

The facts of this case were closely like those in *Railroad Company v. Houston,* 95 U. S. 701, where the court said:

"If the positions most advantageous for the plaintiff be assumed as correct, that the train was moving at an unusual rate of speed, its bell not rung and its whistle not sounded, it is still difficult to see on what ground the accident can be attributed solely to the negligence, unskillfulness or criminal intent of the defendant's engineer. Had the train been moving at an ordinary rate of speed, it would have been impossible for him to stop the engine when within four feet of the deceased. The failure of the engineer to sound the whistle or ring the bell, if such were the fact, did not relieve the deceased from taking ordinary precautions for her safety. Negligence of the company's employes in these particulars was no excuse for negligence on her part. She was bound to listen and to look before attempting to cross the railroad track, in order to avoid an approaching train, and not to walk carelessly into the place of possible danger. Had she used her senses, she could not have failed both to hear and to see the train which was coming. If she omitted to use them and walked thoughtlessly upon the track, she was guilty of culpable negligence, and so far contributed to her injuries as to deprive her of any right to complain of others. If, using them, she saw the train coming and yet undertook to cross the track instead of waiting for the train to pass, and was injured, the consequences of her mistake and temerity cannot be cast upon the defendant. No railroad company can be held for a failure of experiments of that kind. If one chooses, in such a position, to take risks, he must bear the possible consequences of failure."

13—4 WASH.

Judgment reversed and cause remanded with instructions to sustain the motion for non-suit.

ANDERS, C. J., and HOYT, SCOTT and DUNBAR, JJ., concur.