Thornton, by Next Friend, *v.* The Cleveland, Cincinnati, etc., R'y Co.

residence of the relatrix, in support of the motion, but relied upon the averments of the complaint, and the court made no order requiring her to give bond for costs. In law, *prima facie*, the domicil of the husband is the domicil of the wife. The husband being a resident of this State, the wife could not be required to give bond for costs in an action against her husband to recover the custody of her infant child.

There is no error in the record for which the judgment should be reversed.

Judgment affirmed, with costs.

Filed Feb. 5, 1892; petition for a rehearing overruled April 30, 1892.

---

No. 15,749.

THORNTON, BY NEXT FRIEND, *v.* THE CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY.

RAILROADS.— *Contributory Negligence.* — *Reply.*—*Sufficiency of.* — Where a traveller in attempting to cross a railroad track looks in but one direction, from which he is expecting a train, and, in going upon said track, he is struck by a train coming from the opposite direction and is injured; and if, before entering upon said track, he could have looked in the opposite direction to a considerable distance along said track, and could have seen the approaching train which struck him, but failed to look in that direction, and is injured by said train, he is guilty of contributory negligence and can not recover.

SAME.—A traveller has no right to look for danger from a given point and then close his eyes and pass upon the track, and the failure of the company to give the proper signals is no excuse for his lack of diligence.

From the Marion Superior Court.

*W. W. Woollen, J. B. Kealing* and *M. M. Hugg,* for appellant.

*J. T. Dye,* for appellee.

Thornton, by Next Friend, *v.* The Cleveland, Cincinnati, etc., R'y Co.

MILLER, J.—The sufficiency of the reply to withstand a demurrer filed by the appellee is the only question in this case.

The complaint charged that the defendant's road crossed a public highway near the village of Mount Jackson; that immediately east of said highway said company had a tele-graph office from which orders were issued for the movement of the trains of said company over said railroad, and just at this point there was a switch on the north side of said railroad, which was used for the passage of the trains. The highway was much used by the public, and many trains crossed it daily. The crossing was a dangerous one—so much so that a signal was placed west of it, which required the blowing of the whistle and the ringing of the bell on all trains coming from the west over said railroad. At and before that time two trains were accustomed to pass at that point every evening. In doing this, the train going west remained on the main track of said railroad just east of said crossing, and the train going east, after giving the accustomed signal, passed on to said switch and around the one that was on the main track. One Doctor Sellers was then living just south of said railroad and west of said highway, and Frank Thornton, the plaintiff, was living with him. The plaintiff was well acquainted with the immediate surroundings of the said railroad crossing and the manner of running the trains on said railroad; he was seventeen years old, and blind in the right eye. On the evening of the day he attempted to cross the said railroad on said highway, the train going west was yet on the main track, and it appeared to him to be in the act of starting west. Its distance from him was such that he could safely cross said railroad without danger of being injured, provided he watched its movements. Relying upon said railroad's employees discharging their duty, he walked on to said railroad in his attempt to cross it, and was struck by a locomotive engine coming from the west on said railroad, run over by it and the train of cars attached

to it, and injured ; that the injuries thus received by him were caused, not by any fault or negligence on his part, but by the gross negligence of said railroad and its employees, in not blowing the whistle on said locomotive engine which came from the west, three times at a point not less than eighty nor more than one hundred rods from the crossing of said highway, and in not ringing the bell attached to said locomotive engine until said engine had fully passed said crossing, as by said danger signal and the statute of the State they were required to do. And the plaintiff avers it is true that said railroad company and its employees did not give any notice whatever of the approach of said locomotive engine by either blowing the whistle or ringing the bell on said locomotive engine."

The defendant answered the complaint as follows :

" That, on the day of the accident set forth in the complaint, in the evening, said Thornton started from the residence of one Doctor Sellers, being the first residence fronting on the highway in the complaint mentioned, south of said railroad to the said town of Mount Jackson, most of which is on the north side of said railroad ; that immediately before the accident occurred plaintiff was standing on the porch of a residence within one hundred and fifty-five feet of the highway crossing at which said accident occurred ; that at said point he could see west for about one-quarter of a mile on the railroad and about three-quarters of a mile east ; that at the very moment of starting from that point to cross the said railroad he looked west for a train of cars and saw none, and he looked east and saw one standing near said crossing apparently in the act of moving westward ; that knowing there was a post west of said crossing which by its marks required the engineers of trains going east to whistle and ring the bell before passing said crossing, and by his acquaintance with the conduct of said railroad, knowing that such trains should whistle and ring, and having but one eye (he being blind in the right eye), as he passed on to said railroad he listened carefully for

Thornton, by Next Friend, *v.* The Cleveland, Cincinnati, etc., R'y Co.

the whistling and the ringing of the bell on the train that might be coming from the west on said railroad, and heard none, and used the only eye he had to watch the movements of the train that stood just east of the crossing, so that he might not be injured by its movement; that said Thornton was on said day blind in his right eye, and consequently had, in order to look eastwardly, in facing northward, to turn his head eastward; that while in the act of watching, the train standing on said railroad just east of said crossing, and just as he passed upon said railroad, struck said Thornton. And the defendant further says that from the point one hundred and fifty-five feet south of railroad, where the plaintiff last looked to the west, until said plaintiff reached said railroad, he had an open, unobstructed view of the track for a long distance, and could have easily seen the approaching train if he had only looked."

In the reply the averments of the answer to and including the sentence: "And that while in the act of watching the train standing on said railroad, a locomotive and train coming from the west over said railroad struck said Thornton," are admitted to be true, and after making a diagram of the place a part of it, it concludes as follows, to wit: "Plaintiff further says that immediately after looking west for a train on said railroad he started from that point to cross the said railroad, and that he did not stop until he was struck by the train coming from the west on said railroad; that at the moment of starting to cross said railroad he noticed that the men in charge of the train standing east of the crossing were taking their respective positions, and that the said train would immediately move, and knowing that the trains passed at that point at that hour of the day, he believed and acted upon the belief that the train due from the west before he came out on the porch had passed the one standing there; yet, that no accident might happen to him, he listened carefully for the whistling and ringing of an incoming train

from the west, while he watched the one that was standing on the track just east of the crossing; that his hearing was good, and yet he heard no whistle or ring of a bell from the train which did come from the west and run against him and knocked him into the cow-pit and injured him as stated in his complaint. Wherefore the plaintiff says that he did ex-·ercise that degree of dilligence which was, under the circumstances, reasonably practicable and available."

That the conduct of the defendant in failing to give the statutory signals constituted actionable negligence is not disputed, but it is contended that the collision might have been avoided if the plaintiff had exercised the sense of sight, and looked in the direction of the approaching train before he entered upon the track.

The answer avers that "from the point one hundred and fifty-five feet south of the railroad where the plaintiff last looked to the west until said plaintiff reached said railroad, he had an open, unobstructed view of the track for a long distance, and could have easily seen the approaching train if he had only looked." This very material averment of the answer is not denied.

The reply attempts to avoid the force of this averment by stating that he acted upon the belief that the train due from the west had passed before he came out on the porch, and that he watched the train that was standing on the track just east of the crossing; that at the moment of starting to cross the track he noticed that the men in charge of the train were taking their respective positions, and that the train would immediately move; that in order that no accident might happen to him he listened carefully for the whistling and ringing of an incoming train from the west.

From these averments we must infer that while the plaintiff believed that the train from the west had passed, he was apprehensive that such might not be the case, and, therefore, listened carefully for the sounding of a whistle and ringing

of a bell to announce its approach. We may also infer that he continued to listen for the signals of its approach from the time he left the porch, one hundred and fifty-five feet distant, until he stepped upon the track. This was a sufficient exercise of the sense of hearing.

It was not only the duty of the plaintiff to listen for the approach of a train that he knew was due about that time, but to look in the direction from which the train would come.

In *Mann* v. *Belt R. R., etc., Co.*, 128 Ind. 138, it was said: " When about to enter upon the crossing, looking in one direction only is not the diligence required by the law, for the law requires him to look in both directions if it is possible to do so."

In the late case of *Nixon* v. *Chicago, etc., R. W. Co.* (Iowa), 51 N.W. R. 157, it was held that a traveller who looked only in one direction, because he expected a train from that direction, and was injured by a train coming from the opposite direction, which he might have avoided if he had looked, was guilty of contributory negligence, although the usual crossing signals were not given.

That it is the duty of one who approaches a railroad crossing to both look and listen, and that the failure of the company to give the statutory signals does not excuse this precaution has been so often stated and decided that we deem it unnecessary to make any extended citation of authorities. *Cadwallader* v. *Louisville, etc., R. W. Co.*, 128 Ind. 518; *Mann* v. *Belt R. R., etc., Co., supra; Ohio, etc., R. W. Co.* v. *Hill,* 117 Ind. 56 ; *Indiana, etc., R. W. Co.* v. *Hammock,* 113 Ind. 1.

The appellant's counsel, in their brief, do not controvert this general proposition of law, but contend that the plaintiff both looked and listened ; looked at the train standing still on the east, and listened for the train from the west.

If the only opportunity the plaintiff had for seeing the approaching train was at the moment he was about to step upon the track, when the standing train was about to move, the necessity for watching it might have afforded an excuse for not looking in the other direction, and the reasoning and authorities cited by appellants would be in point. But the reply furnishes no excuse for not looking to the west, and seeing the approaching train, at some time while going from the Sellers porch to the crossing. The plaintiff may not have been negligent in failing to look to the west, at the instant of time, or shortly before he entered upon the track, but he was grossly negligent in failing to look in that direction at some point between the house and the crossing, when, the view being unobstructed, and the train in plain sight, he might have avoided the injury.

The fact that the train from the west was due before the train from the east, which was standing on the track, did not excuse him from the duty of looking for its approach. In the case of *Nixon* v. *Chicago, etc., R. W. Co., supra,* it was argued that the plaintiff was excused for not looking for the approach of the train from the south, by which he was injured, because it was due before the train from the north. In disposing of this contention the court said: " It is enough to say, in answer to this, that the traffic and running of trains on railroads is such that there can be no excuse for a traveller to coolly and calmly approach a railroad track, and look but one way."

While the plaintiff was not required to enter into a calculation of the comparative speed of a traveller walking toward a railroad track, and a train of cars passing along that track at ordinary speed, he must, as a matter of common observation, have known that while he would walk one hundred and fifty-five feet, the train would cover a considerable distance, sufficient at least to require him to look for its approach at some point during his journey. He had no right

to look from a given point, and then close his eyes and pass upon the track. *Mann* v. *Belt, etc., R. R. Co., supra.*

In our opinion the answer was good, and, therefore, the reply was not good enough for a bad answer.

Judgment affirmed.

Filed May 10, 1892.