## INDIANAPOLIS STREET RAILWAY COMPANY *v.* ZARING, ADMINISTRATOR.

[No. 4,520.   Filed June 7, 1904.]

NEGLIGENCE.—*Contributory.*—Where plaintiff in an action for personal injuries is shown to have been guilty of negligence contributing to his injury he can not recover though defendant was guilty of the negligence charged.   *p. 298.*

SAME.—*Contributory.*—*Street Railroads.*—The action of a street railroad company in running a street car at the rate of twenty miles an hour over and upon a public street, approaching the intersection of three streets where persons on foot and in vehicles were likely to be traveling in different directions, heedless of the rights of such travelers, amounted to negligence.   *p. 299.*

SAME.—*Contributory.*—*Street Railroads.*—In an action for the death of one killed by a collision with a street car, it was shown that decedent was riding a bicycle at a speed of six or eight miles an hour along a street containing double street car tracks; that there were two wagons in the street and that he increased his speed so as to pass around them, and in attempting to cross the tracks was struck by a car and killed. It was shown that decedent was familiar with the street, and that he could have seen the approaching car at all times while he was on the street, except while he was riding a distance of about ten feet, when the wagons were between him and the car, if he had looked, and that he could have heard the noise made by the car for a distance of 100 feet, if he had listened.   *Held,* that decedent was guilty of contributory negligence precluding a recovery.   *pp. 299–302.*   Roby, P. J., dissents.

From Johnson Circuit Court; *W. J. Buckingham,* Judge.

Action by Leander B. Zaring, administrator of the estate of Samuel H. Cagly, deceased, against the Indianapolis Street Railway Company. From a judgment for plaintiff, defendant appeals.   *Reversed.*

*F. Winter, Clarence Winter, W. H. Latta, R. M. Miller* and *H. C. Barnett,* for appellant.

*F. P. Baker, W. A. Johnson, W. E. Deupree* and *L. E. Slack,* for appellee.

WILEY, J.—This cause originated in the Marion Superior Court, from whence it was venued to the court below. Appellee's decedent was riding a bicycle on one of the public streets of the city of Indianapolis, and while attempting to cross appellant's tracks he came into collision with one of its cars, and was killed. Appellee prosecuted this action to a successful termination in the court below to recover damages for the death of his decedent, which was imputed to appellant's negligence. As no question is argued touching the sufficiency of the pleadings, they need not be noticed in this connection. Trial by jury, verdict and judgment for appellee for $850. The jury found specially, also, by answers to interrogatories. Appellant's motions for judgment on the answers to interrogatories and for a new trial were overruled. The only questions argued arise under the assignment of error questioning the correctness of these rulings.

The negligence imputed to appellant was the the careless and reckless operation of one of its cars being run on Virginia avenue, as it approached the intersection of Louisiana and New Jersey streets, in that it was run at a dangerous and reckless rate of speed, and that no warning was given to appellee's decedent of its approach, by the sounding of the gong or otherwise. There are many facts found, as disclosed by the answers to interrogatories, that are wholly unessential and immaterial to the determination of the legal questions involved. Those questions are: (1) Do the special facts found show that appellant was guilty of the negligence charged? (2) Do they show that appellee's decedent was free from negligence? If they do, then such special findings are in harmony with the general verdict. But if they disclose the fact that appellant was thus negligent, and that the decedent was guilty of negligence that contributed to his death, then there is irreconcilable conflict between the general verdict and the answers to interrogatories. In such case the rule is firmly estab-

lished that, though the defendant was guilty of the negligence imputed to it, yet, if the plaintiff was at fault, he can not recover.

The facts specially found do not overcome the general verdict as to the negligence of appellant. On the contrary, by them its negligence is emphasized, for it is shown that it ran its car over and upon a public street at the rate of twenty miles per hour, approaching the intersection of three streets, where persons on foot and in vehicles were likely to be traveling in different directions, and apparently heedless of the rights of travelers on such streets. Such conduct must be regarded as negligence.

The remaining question—the decedent's negligence or non-negligence—is more difficult to determine. The facts upon which the determination of this question depends may be summarized as follows: The decedent was a man of mature years and judgment, and was in the possession of his senses of hearing and seeing. He was a man of average strength, judgment, and intelligence. The accident occurred in Virginia avenue where it intersects Louisiana and New Jersey streets. Said avenue runs northwest and southeast, is fifty feet wide between the curbs, is paved with asphalt, and has sidewalks on either side twenty feet wide. Along said avenue there are two street car tracks, and cars were operated frequently thereon. New Jersey and Louisiana streets are ninety feet wide from property line to property line where they intersect with Virginia avenue, and at said intersection a large space is formed at that point. There is a heavy grade from the intersection of the three streets on Virginia avenue leading to and over the viaduct. Decedent was riding a bicycle, and was a competent and experienced rider. He could have stopped his bicycle in a distance of ten feet, at the rate of speed he was going. He was familiar with the location and surroundings, and knew that cars were frequently passing to and-fro on the double tracks on Virginia avenue. He was

riding six to eight miles per hour. There were two wagons on the street, and he increased his speed so as to pass around them. He approached Virginia avenue from the south, riding north on New Jersey street. The jury found that the two wagons in the street obstructed decedent's view of the approaching car only while he was riding a distance of ten feet, and that there was nothing else to obstruct such view at any time. The car that struck him was going southeast, and running down the incline from the viaduct. From the point of the collision to the top of the viaduct was about five hundred feet. There was nothing to prevent his view after he passed in front of the wagons. He looked toward the viaduct after he passed the west property line of Virginia avenue, when he got within fifteen feet of the track. The car that struck him was about fifteen feet high and seven and one-half to eight feet wide. If decedent had listened, he could have heard the noise made by the car for a distance of 100 feet. He was fifteen feet from the west rail of the west track when his view of the west track, looking toward the northwest, was first interfered with by the wagons. When he was at the west property line of the avenue the car that struck him was 250 feet from the point of collision, and when he was at said property line he could have seen the west track, in the direction of the viaduct, for a distance of 500 feet. When he was at the west curb line of the avenue the car was 120 feet from the point of collision. There were no objects in the west roadway of the avenue, or on the west sidewalk between the place where he crossed the roadway and the top of the viaduct, that in any way obstructed the view between him and the approaching car, except the two wagons. The highest point of one of the wagons was six and one-half feet and the other six feet.

These facts disclose two controlling conditions: (1) That at all times after he had entered on Virginia avenue

the decedent could have seen the approaching car if he had looked, except while he was riding a distance of ten feet, when the wagons were between him and the car; and (2) he could have heard the noise of the car for a distance of 100 feet, if he had listened. At the speed he was riding—and it is found he increased his speed to eight miles an hour as he passed the wagons—his view was obstructed only momentarily. Such view was obstructed, as the jury finds, while he was riding a distance of ten feet. At eight miles an hour he would ride ten feet in eighty-five hundredths of a second, so his view was obstructed for only eighty-five hundredths of a second, and, with that exception, his view was unobstructed while he rode from the west property line to the point of collision. These facts present a case where it would seem that the deceased was attempting to cross the avenue in front of the wagons, and that he was oblivious to any danger of collision with a street car. He could have seen the approaching car if he had looked, and heard it if he had listened, in time to have avoided the collision. His failure to see or hear, under the facts specially found, and the authorities in this State, must be adjudged negligence on his part. As he could have seen if he had looked, and heard if he had listened, it will be presumed that he did not look, or, if he did, he did not heed what he saw; and that he did not listen, or, if he did, that he did not heed what he heard. Such conduct is held to be negligence *per se.* The following authorities support the conclusion we have reached, that appellee's right to recover must be denied on account of the negligence of his decedent: *Ohio, etc., R. Co.* v. *Hill,* 117 Ind. 56; *Cones* v. *Cincinnati, etc., R. Co.,* 114 Ind. 328, 330; *Lake Erie, etc., R. Co.* v. *Stick,* 143 Ind. 449; *Young* v. *Citizens St. R. Co.,* 148 Ind. 54; *Citizens St. R. Co.* v. *Helvie,* 22 Ind. App. 515; *DeLon* v. *Kokomo City St. R. Co.,* 22 Ind. App. 377; *Pittsburgh,*

*etc., R. Co.* v. *Fraze,* 150 Ind. 576, 65 Am. St. 377; *Oleson* v. *Lake Shore, etc., R. Co.,* 143 Ind. 405, 32 L. R. A. 149; *Chicago, etc., R. Co.* v. *Thomas,* 155 Ind. 634; *Indianapolis St. R. Co.* v. *Tenner,* 32 Ind. App. 311.

The judgment is reversed, and the court below is directed to sustain appellant's motion for judgment on the answers to interrogatories.

Black, C. J., Comstock, Robinson, and Henly, JJ., concur. Roby, P. J., dissents.

## DISSENTING OPINION.

ROBY, P. J.—The jury in this case returned a general verdict for the plaintiff, together with answers to certain interrogatories which had been propounded to them. The examination as to the merits of this appeal made by the court, as shown by the opinion heretofore filed, does not include more than a consideration of answers to interrogatories, and judgment for the defendant notwithstanding the general verdict was directed thereon. With this disposition I am not able to agree. The process followed, as disclosed by the opinion, is subversive of well-established and firmly-settled principles of law which are binding upon this court.

The questions involved are stated by the learned writer of the opinion as follows: (1) "Do the special facts found show that appellant was guilty of the negligence charged?" (2) "Do they show that appellant's decedent was free from negligence?"

If a special verdict were under consideration, no general verdict having been returned, then the first proposition, thus stated, would be correct. If this court were acting as a jury, unfettered in law as well as in fact by any previous proceeding, the proposition would indicate one question for its decision. The jury stage has been passed, and the general verdict in his favor relieves appellee from the necessity

of showing by the answers to interrogatories that appellant was guilty of the negligence charged. The following is a very fair statement of the law: "A general verdict is the solemn declaration of the, jury that upon all the facts proved in the case the plaintiff's injury was the direct and proximate result of the defendant's negligence charged in the complaint, and that the plaintiff was free from fault contributing thereto; and in support of the conclusion of the jury it has been often decided by this court that a general verdict will not be defeated by isolated facts disclosed by answers to interrogatories, unless such facts are shown to be so repugnant and contradictory to the general verdict that both can not be true under any conceivable state of facts provable under the issues." *Indiana R. Co.* v. *Maurer,* 160 Ind. 25; *Midland Steel Co.* v. *Daugherty,* 26 Ind. App. 272; *Gunther* v. *Fohey,* 26 Ind. App. 93. This well-established rule is overridden, and the general verdict and its presumptions ignored as a first and necessary step to the result which has heretofore been announced.

The second proposition stated is of the same quality as the first. The learned writer of the opinion marked out the task of determining whether the freedom from fault of the plaintiff was affirmatively shown by the findings; again forgetting the effect of the general verdict and ignoring the rule which has been stated and reiterated by this court a great many times. If the statement of the second point for decision is correct, then, also, §359a Burns 1901, declaring contributory negligence to be a matter of defense, is judicially and by implication repealed, since the burden is, in the opinion, placed upon the plaintiff. The issue upon this branch of the case, correctly stated, is, do the facts exhibited by the answers show that appellant's decedent was negligent?—not free from negligence. Having started upon a basis as incorrect as ingenuity can devise, an enumeration of "facts upon which the determination of the. appeal depends" is set forth in the main opinion.

It is there said that there are many facts found that are wholly unessential and immaterial to the determination of the legal question involved. The decision is made to turn upon the assertion that "the decedent could have seen the approaching car, if he had looked," as he approached the track, except for a distance of ten feet, and have "heard the noise of the car for a distance of 100 feet, if he had listened."

In addition to the facts enumerated in the main opinion are those which "might have been proved under the issue," and also a number found by the jury, which, in the opinion of the writer, are not "immaterial" and "nonessential," and for the elimination of which no warrant of law exists. They are readily discoverable from a comparison of the following summary of the facts stated in the answers to interrogatories with the statement of the main opinion. Decedent was fifty-five years of age at the time of the accident complained of, which was July 26, 1901. He had good eyesight, hearing, health, and also good use of his arms and legs. He had no impairment of mind or faculty, and was of average strength and intelligence. He was a painter, accustomed to earn $32 a month. He was an experienced bicycle rider; had been riding one about a year. He knew how to manage the bicycle, and within what distance he could stop and turn. He could stop at the rate he was riding within ten feet. He could turn so as to change his course within eight feet. He could have alighted after he came into the roadway of Virginia avenue, and before he reached the railway tracks. There was nothing to prevent his so doing, and he was not prevented from so doing. He was prevented by wagons from turning aside in the roadway before he reached the car track. He could not, after coming into the roadway, have turned out of the way of the car. He was prevented from so doing. He could not have stopped after he came into the roadway before reach-

ing the car track and remained out of the way of the car. He was prevented from so doing by wagons.

The accident occurred on Virginia avenue, in Indianapolis, at the intersection of Louisiana and New Jersey streets. Virginia avenue ran northwest and southeast; was fifty feet wide from curb to curb, with sidewalks twenty feet wide on each side, and was paved. There were two car tracks laid thereon, each four feet eight inches in width, and laid so as to be equally distant from the center of the street. They were five feet apart. Cars propelled by electricity ran over the street frequently, those going southeast using the west track. New Jersey and Louisiana streets were each ninety feet wide. Beginning at the north side of the open space formed by the intersection of the three streets named there is an up grade of five feet in 500 feet, extending 100 feet northwest, approaching a viaduct. The distance from the west property line of the avenue to the west rail at the place of the accident was thirty-seven and six-tenths feet. Decedent was struck by a car going south on the west track. The car was about fifteen feet high, between seven and eight feet wide, and was painted yellow. It was running at the time of the collision about twenty-two miles an hour. Its average speed, while it ran the last 500 feet before striking him, was twenty miles an hour. If he had listened for it he could have heard the car 100 feet away. The accident occurred in the daytime, at 6 o'clock. The weather was dry and clear. Decedent was going home from work. He had lived in Indianapolis three years. This street intersection was his usual place of crossing the car tracks on his way to and from work. He was familiar with the situation and the operation of cars there. He came from the south on New Jersey street, about its center, until twenty feet from the west rail, at about six miles an hour, then turned east to cross the tracks, riding at about eight miles an hour. He increased his

speed when about ten feet from the track on account of the wagons. The front wheel of his bicycle was three feet over the rail when he was struck. The car was ten feet away when he reached the west rail. He could not have seen the car at all times after he passed the west line of Virginia avenue. He could have seen it after he passed said west line, and before he turned to cross the tracks. There were two vehicles approaching from the north, one driving after the other. Decedent crossed ten feet ahead of the horses in front of the vehicles, which were driven six or seven feet west of the track. The vehicles prevented him from seeing the car while he was riding ten feet. There was nothing to prevent his seeing the car after he passed in front of the vehicles. The emergency caused by the wagons prevented his waiting to cross until the car passed. He looked toward the viaduct when he was fifteen feet from the track; did not see the car that struck him; did not try to get in front of it by increasing his speed. He did not voluntarily go on the track with knowledge of the car's approach. He was prevented from seeing it by wagons. He did not know that the car was rapidly approaching when he went on the track. The car was not in plain view from the time he entered Virginia avenue. He was fifteen feet from the track when his view was obscured by the vehicles. He was five feet from the track when they ceased to interfere with his view. He knew of the vehicles when he crossed in front of them, but did not know to what extent they would interfere with his view. The car was 250 feet distant when he entered upon the avenue. He could then see 500 feet north. It was 120 feet distant when he was at the curb. He rode at the average speed of six and one-half miles an hour. The vehicles referred to were two-horse farm wagons, the front one having an unloaded hay frame above the wheels. The highest part of the wagons was six and one-half feet above the ground. They were being driven about four miles an hour. None

of the car was visible to decedent while the wagon was between him and the car.

These answers, as returned by the jury, among other things disclose that decedent had neither opportunity nor time to stop or turn aside after he discovered, or could have discovered, that the car was in dangerous proximity. It is not shown that he knew or that he should have known that the car approaching was being run at the rate of twenty-two miles an hour, and it must therefore be presumed that he did not know such fact, and, indeed, it is so found in terms. It is true that there is a finding to the effect that he was familiar with the streets and the operation of the cars at that point, but it is not shown that appellant habitually ran its cars at the dangerous rate of speed of twenty-two miles an hour.

It will be presumed in the absence of contrary proof that appellant habitually ran its cars at a safe rate of speed at that point, and with due regard to the lives and limbs of its patrons and the public, and that decedent therefore acted upon the assumption that this particular car would be so run. His familiarity with the place and the manner in which appellant's cars were operated became, therefore, a strong circumstance tending to relieve him from any imputation of negligence. The jury may have considered the fact, as this court has evidently not done, that had the car been running at such a rate as he had the right to anticipate —say at six miles an hour—the decedent could not have been in any possible danger through attempting to proceed on his homeward journey. Indeed, had its speed been increased to ten or fifteen or eighteen miles an hour, no accident would have occurred to him; and had the car been under control at the crossing, as it was the duty of the appellant and its motorman to have it, and as he had a right to presume it was, there would have been no danger. The duty of the motorman, in the light of which the decedent acted, is clearly stated by the Supreme Court as fol-

lows: "And, although a street car or other vehicle moving along the street has a right, also, to pass over the crossing, yet, as has been well said, it behooves the motorman of the electric car, or the driver of any other vehicle, to be vigilant in approaching a cross-walk, so as to avoid injury to a foot passenger, even though the latter may be careless in hurrying over. In a city, the people must hasten to their business, and can not wait until all pass by who wish to use the roadway over which they must cross." *Evansville St. R. Co.* v. *Gentry,* 147 Ind. 408, 37 L. ,R. A. 378, 62 Am. St. 421.

It appears that the car projected over the track sixteen and one-half inches, so that, when the decedent's view was no longer obstructed by the wagons he was between four feet and eight inches and five feet and eight inches, or, as has been found by the jury, five feet, from the danger point. This was further reduced by the distance that the forward wheel of the bicycle was in advance of the rider. It thus affirmatively appears that no negligence is shown by the answers to interrogatories to have existed upon the part of the decedent, except as it is deduced by this court from the single fact that when the car was from two hundred fifty to one hundred twenty feet distant he might have seen and heard it had he looked and listened. In other words, it is held, as a matter of law, that one attempting to cross a public street in the city of Indianapolis, in front of an electric car from two hundred fifty to one hundred twenty feet distant, is guilty of contributory negligence. It is undoubtedly true that circumstances might exist which would require a conclusion of that sort, but in the case at bar no such circumstances are shown or hinted at by the answers to interrogatories, and their existence is negatived, not only by the general verdict, but by the specific facts returned.

Among other facts, not considered in the majority opinion, the jury found, in answer to interrogatories, that the

decedent, when he reached the curb line of the avenue, could neither have stopped nor turned aside. This is the finding of a fact. It is inconsistent with the fact that he could have stopped or turned aside within the distance specified by other interrogatories, and deprives the finding that he could have seen the car when it was 240 feet away of any significance. It may be that this answer was not supported by evidence, but that is a question with which we have no concern 'in considering a motion for judgment upon the answers to interrogatories. A party who relies upon facts thus established must take them all, and neither he nor the court may override or ignore them in part.

In the recent case of *Baltimore, etc., R. Co.* v. *Cavanaugh* (Ind. App.), 71 N. E. 239, this court said: "Said instructions twenty and twenty-one are open to the objection that they, in effect, hold appellee's failure to use the best judgment and to do the best thing, that, under the circumstances, could have been done, to be negligence. They fix too high a standard of diligence. The rule requires one to act as an ordinarily prudent man would, similarly situated." This is the standard of conduct prescribed by right reason and declared by law. By it the conduct of the decedent should be judged. Without elaboration, and with the utmost deference to my associates, I respectfully submit that the mandate directing judgment notwithstanding the general verdict is based upon a misapprehension of the facts involved, and a misunderstanding of the applicable law.